CHARLES A. HEDGES et al., Respondents, *v.* THE WEST
SHORE RAILROAD COMPANY and THE NEW YORK CENTRAL
AND HUDSON RIVER RAILROAD COMPANY, Appellants.

1. RIPARIAN RIGHTS ON TIDAL RIVER.   The owner of uplands bounded
by the waters of a tidal river has a natural easement or right of access to
the channel, but this does not include any right arising from the use of
land under water or the bed of the river, below high-water mark, and his
easement cannot be enlarged at will or according to his convenience and
necessity in such a manner as to prevent other parties, to whom the state
has granted the bed of the river or some portion of it, from using their
own property in a way which does not substantially interfere with his
access to the channel, although the effect of it may be to obstruct a
particular mode of access subsequently desired by him, which is not
included in or incidental to his ownership of the uplands, and which
would be inconsistent with the rights of the owner of the intervening
land under water below high-water mark.

2. RIPARIAN RIGHTS, AS AFFECTED BY RAILROAD STRUCTURE UPON
BED OF TIDAL RIVER.   An action by the owner of land abutting on a
tidal river, against a railroad company, for an injunction and the recovery
of damages caused by an open piling and railroad superstructure below
high-water mark, claimed to be an obstruction to his right of access to
the channel, cannot be maintained when it appears that the alleged
obstruction was erected and is maintained, in pursuance of legislative
authority, upon the bed of the river, which the company acquired from
the state, and that the natural condition of things was left practically
unchanged and the abutting owner is given suitable and reasonable means
of access to the channel.   Such structure, lawful in its inception, does not
become unlawful because it interferes with and obstructs a particular
mode of access desired by the upland owner subsequent to its erection,
involving the use of the bed of the river below high-water mark, which
use is not incidental to his ownership of the uplands, but entirely distinct
therefrom, such as the construction and use by him of an artificial canal
for the floating of large vessels from his lands to the channel, across lands
under water belonging to the state.

*Hedges* v. *W. S. R. R. Co.*, 80 Hun, 310, reversed.

(Argued May 29, 1896 ; decided October 6, 1896.)   .

APPEAL from judgment of the General Term of the
Supreme Court in the second judicial department, entered
August 1, 1894, which modified, and, as modified, affirmed, a

judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward Winslow Paige* for appellants.   The defendants' structure is not and never has been any obstruction to any navigation of which the waters have ever been susceptible, nor any obstruction of the access from the plaintiffs' land to the navigable channel of the North river.   (*Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 144 N. Y. 75, 87; *Ten Eyck* v. *Town of Warwick*, 75 Hun, 562; *Morgan* v. *King*, 35 N. Y. 454; Gould on Waters [2d ed.], §§ 111, 150, 154, 167; Angell on Watercourses [7th ed.], § 541.)   The plaintiffs have no right to dig the canal.   (*Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 144 N. Y. 75; *Shively* v. *Bowlby*, 152 U. S. 1; *People* v. *N. Y. & S. I. F. Co.*, 68 N. Y. 71; *People* v. *Vanderbilt*, 26 N. Y. 287; *Delancey* v. *Piepgras*, 138 N. Y. 26; *Kaukauna W. P. Co.* v. *G. B. & M. Canal Co.*, 142 U. S. 254; *Lyon* v. *Fishmongers' Co.*, L. R. [1 App. Cas.] 662; *Rose* v. *Graves*, 5 M. & G. 613; Washb. on Easements [4th ed.], 297, § 5; Gould on Waters, §§ 124, 150; *Bailey* v. *P. R. Co.*, 4 Harr. 389; *B. & W. R. R. Co.* v. *O. C. R. R. Co.*, 12 Cush. 605; *Hotz* v. *Hoyt*, 135 Ill. 388.)

*Andrew Shiland, Jr.*, for respondents.   The plaintiffs, as owners and in possession of the upland on the shore of the Hudson river, were and are the owners of the easement appurtenant thereto, of access to and from the navigable waters of said river.   This easement having been obstructed by the construction of the defendants' railroad embankment and trestle in the waters of the Hudson river in front of plaintiffs' land, plaintiffs are entitled to recover the damages sustained to the usable or rental value thereof by the obstruction of said easement by defendants' railroad, such easement not having been granted to the railroad by the owners of the uplands nor obtained by the power of eminent domain. (*Rumsey* v. *N. Y. & N. E. R. R. Co.*, 114 N. Y. 423; 133

N. Y. 79; 136 N. Y. 543; *N. Y. C. & H. R. R. R. Co.* v. *Aldridge,* 135 N. Y. 83; *Saunders* v. *N. Y. C. & H. R. R. R. Co.,* 144 N. Y. 75.) The law recognizes the right of a riparian owner of lands upon a public stream to avail himself of artificial means in the enjoyment of his easement of access to and the enjoyment of his right of passage over and upon navigable waters, such as the construction and maintenance of landing places, wharves, etc., upon the shores of his lands and below the high-water line, and upon lands under water. (*Herman* v. *Roberts,* 119 N. Y. 37–42; Washb. on Easements, 377; *Yates* v. *Milwaukee,* 8 Minn. L. Rep. 89.) As riparian owners, plaintiffs had a right to improve their easement of access from the shore to the channel of the Hudson river. The right to dredge and deepen the water is appurtenant to the easement. (16 Am. & Eng. Ency. of Law, 939; *K. I. Co.* v. *Shultz,* 116 N. Y. 382; *People* v. *Vanderbilt,* 26 N. Y. 293; *People* v. *Tibbetts,* 19 N. Y. 526; *Rumsey* v. *N. Y. & N. E. R. R. Co.,* 114 N. Y. 423.)

O'BRIEN, J. This action, in its form and in the nature and measure of the relief awarded by the judgment, is substantially the same as the numerous cases, now so familiar to the court, prosecuted by the owners of property, abutting upon streets in the city of New York, against the elevated railroads. The principle upon which the judgment rests is far reaching in its operation and application and demands most careful examination.

There is but little, if any, dispute with respect to the material facts, the controversy depending entirely upon the rule of law that should govern the rights of the parties. The plaintiffs are the owners of certain uplands on the westerly shore or bank of the Hudson river at or near Cornwall. They acquired the title to these lands by grant from the executor of one Ward October 25, 1886. Subsequently, and on September 7, 1887, they acquired by grant from the state certain lands under water adjacent to and in front of the uplands, which they filled up, and by construction of all the necessary

appliances have converted the whole property into a brick yard where they have ever since been engaged in the business of manufacturing bricks for sale, and transporting their product to the market by railroad, and also by boats upon the river. All this took place with full knowledge on the part of the plaintiffs of the existence and operation of the railroad, it having been constructed and put into operation several years before the plaintiff purchased the land, the situation then being the same as when this action was commenced. The New York Central is the lessee of the West Shore Railroad Company, the latter having succeeded to all the rights and franchises of other corporations that had constructed and put into operation the railroad now operated by the Central Company alcng the westerly shore of the river. The railroad was constructed and put into operation in the year 1883. The plaintiffs' property is situated at a point where a stream known as Murderers' creek, flowing from the west, enters the Hudson and at the junction of a branch of the railroad of the defendants which runs from a westerly point, and here intersects the main line, running north and south along the westerly shore of the Hudson. In the year 1881 the executors of Ward granted to the railroad corporation considerable land for the purpose of constructing the road upon the banks of the creek and near the river, for which the railroad paid between four and five thousand dollars. In the same year the railroad company, exercising the right of eminent domain under the statute, condemned a strip of land under water, ninety-nine feet wide across the mouth of Murderers' creek. This proceeding was for the purpose of acquiring the title of the state to this strip, and upon the confirmation of the report the railroad company paid the award and proceeded to construct the road. At that point the railroad structure is a pile bridge across the mouth of the creek with openings of fourteen feet between the uprights and of a height, in the clear, of eight feet above high tide. The easterly line of the plaintiffs' grant from the state is a dock which has been constructed for

the purpose of their business, and there intervenes between the dock and the railroad structure a space one hundred feet wide which belongs to the state.

The only injury which it is claimed the plaintiffs have sustained is the obstruction which the railroad structure constitutes to their access from their uplands to the channel of the river. In the natural condition of things, and at the time of the plaintiffs' grant, and at the time of the construction of the railroad, the waters of the river at this point were quite shallow, and navigable only with small boats, and it is found that at these times there was no place in the river between the plaintiffs' grant and the railroad structure, and within several hundred feet outside or easterly of it, where there was water enough to float the barges or vessels, when loaded, which the plaintiffs have now in use in their business. It appears that in 1887, after the plaintiffs had prepared the brick yard, they began at the westerly channel bank of the river to dig a canal ten feet deep and about thirty feet wide, and continued this canal westerly towards the railroad structure and the shore, about twenty-eight hundred feet to the easterly edge of the strip acquired by the defendants from the state, and upon which the railroad was constructed. Here the plaintiffs were obliged to stop, as the structure upon which the railroad is operated became an unquestionable obstruction to the further progress of the work, so that the plaintiffs have not been able to complete the canal up to the brick yard. This being the situation, the plaintiffs were obliged to build a causeway from their brick yard, easterly from their own land, across the space of one hundred feet belonging to the state, across and under the railroad structure to a dock outside, between the railroad and the channel, where the barges could land. Upon this causeway has been placed a car track, over which the bricks are conveyed in cars for the space of about three hundred feet to the vessels in the river.

There is some confusion and conflict in the findings with respect to the precise location of the strip of land under water which the defendants acquired from the state, and upon which

the railroad structure is built, whether it is a part of Murderers' creek or of the river.   The defendants claim that it is part of the creek; and as they own the banks and bed of that stream the *locus in quo* is in the strictest sense private property.   The findings, however, sufficiently show that the pile bridge or structure complained of is over an inlet of the river, formed by the junction of the creek at that point, in waters where the tide ebbs and flows, and for all the purposes of this discussion it will be assumed that the structure is in the Hudson.   We have then, the case of a riparian proprietor who, with knowledge of the situation, devotes, or attempts to devote, his property to certain uses, inconsistent with the existence of the railroad, and a structure in a public river, some two hundred feet below high-water mark, and between the plaintiff's property and the navigable channel, constructed under the circumstances stated, constituting an obstruction to the plaintiffs' access from their property to the channel, in the manner and to the extent that they now claim and assert as a legal right.   This is, practically, the physical situation upon which the plaintiffs' judgment rests.

It should be observed here that in the numerous cases in this court, where actions of this character have been sustained by property owners against the elevated railroads in New York, a fundamental fact was always assumed or found, namely, that the railroad structure in the street was, as to the abutting property owner, unlawful and a trespass upon his property rights. (*Story Case*, 90 N. Y. 122; *Lahr Case*, 104 N. Y. 287; *Am. Bank Note Co. Case*, 129 N. Y. 252; *Odell Case*, 130 N. Y. 690; *McGean Case*, 133 N. Y. 9.)

In this case the learned trial judge has found, as conclusions of law, that the defendants have wrongfully and without lawful right, as against the plaintiffs, constructed and maintained said railroad structure, across the waters of said river, between the plaintiffs' said lands and premises, and the navigable waters of said river, and have wrongfully obstructed the plaintiffs' access from their property to the channel and so have injured the plaintiffs in their property rights.   This finding suggests

the important principle involved in the case, and that is
whether the defendants have in fact or in law invaded any
right of property which the plaintiffs acquired under the
grants mentioned.

In order to get a clearer view of the question it may be well
to go back to the condition of things that existed before the
railroad was built and inquire what the rights of the parties
then were and how these rights have been affected by subse-
quent events.

The ownership of the plaintiffs' upland was then in Ward,
or his executor, under the will, and the title to the strip of
land upon which the railroad structure now stands was in the
state, subject to an easement in favor of the then owner of the
plaintiffs' lands, to pass over it upon the water to the navigable
channel of the river and to enjoy such riparian rights as were
incidental to the ownership of the shore and bank of the river.
(*Rumsey Case*, 133 N. Y. 79; *Saunders Case*, 144 N Y. 87.)
There is no question in the case, of course, concerning ease-
ments of light and air since it is not claimed that these rights
have been at all affected by the acts of the defendants.   The
plaintiffs' case rests entirely upon the proposition that the
defendants have invaded and obstructed the right of access
to the navigable highway.   In the original condition of things
the strip of land under water, where the defendants' railroad now
is, was affected with two distinct rights and interests that were
liable to conflict with each other, and this litigation is really
the result of such conflict.   It arises largely, we think, from
a misconception, on the part of the riparian owners, with
respect to the nature, character and extent of their rights.
The riparian owner had nothing but a natural easement or
right of access over this strip of land as an incident of his
ownership of the uplands.   On the other hand, the sovereign
owned the land, subject to such easement, and had the right
to put the land to any use consistent with the exercise of the
easement on the part of the riparian proprietor.   The owner
of the banks and shore could not so exercise his right of
passage or access to the channel as to destroy, or unreasonably

interfere with, the right of the sovereign to put its own land to such use as it thought proper. Where two such rights or interests exist, with respect to the same portion of the earth's surface, each must be exercised and enjoyed in a reasonable way. Each right or interest in such a case is always subject to the qualification that it cannot be exercised or enjoyed in such a way as to destroy the other. (*Atkins* v. *Bordman*, 2 Met. 457; *Perley* v. *Chandler*, 6 Mass. 454; *Gerrish* v. *Shattuck*, 132 Mass. 225.)

The owner of the uplands cannot exercise his easement or right of access to the channel in such a way as to prevent other parties, to whom the sovereign has granted the bed of the river or some portion of it, from using their own property in a reasonable way. The rights of the parties in these respects are governed by the general rules of law applicable to easements and servitudes generally. (Washburn on Easements, ch. 1, § 1; Id., ch. 3, § 1; Id., ch. 2, § 5.) The sovereign, that is to say the state, could have built a railroad upon the strip of land while it was the owner of it, and the then owner of the plaintiffs' uplands could not complain, providing he was given suitable and reasonable means of access to the channel. Instead of doing this it has chartered a corporation for that purpose, and this corporation has acquired the title of the state to the piece of land and has constructed the railroad, and is operating it as a public common carrier. The corporation constructed the road upon its own land, under legislative authority, and provided for passageway, over the water beneath the structure, spaces fourteen feet in width and eight feet in height at high tide. The easement of access to the river by the owner of the lands on the shore was respected. It could still be enjoyed and exercised in a reasonable way and in practically the same way that it had been enjoyed before or was capable of enjoyment in its natural state. Hence, the defendants or their predecessors in title invaded no property right of the riparian owner. The railroad company could have appropriated the easement upon making compensation, in the exercise of the right of eminent

domain, or so constructed its works as to permit its future enjoyment and exercise in a reasonable and suitable manner. It elected to take the latter course, and, therefore, the structure was placed where it now is under lawful authority. The rights of the state to the land had been acquired in pursuance of law, and the easement of the upland owner had not in any legal sense been disturbed.

If it was a lawful structure when placed in the river where it now is, it could not become unlawful in consequence of any changes that may have since taken place. Any other rule would make it impossible for a railroad to perfect its right to cross an inlet of a public river, since the right would then be subject to any and all changes that might take place in the use of the lands upon the shore or to the enlargement of the means of access by the upland owner as the development of his property might require.

We do not hold that he is to be limited to such means of access as exist or are in use at the time of the construction of the railroad. He may insist at all times upon the enjoyment of the right of access in a reasonable manner, but not in such a way as would be inconsistent with the rights of the owner of the land which is subject to that right.

In determining in such cases whether the property rights of the riparian owner have been invaded, we must bear in mind that these rights were not originally absolute, but qualified by other rights in the owner of the land in the bed of the stream, and that they cannot be enlarged at will or according to his convenience or necessity. So long as the natural condition of things is left practically unchanged and opportunity afforded at all times for reasonable modes of access, the owner of the lands upon the shore has no just grounds of complaint. (*Lyon* v. *Fishmongers' Co.*, L. R. [1 App. Cas.] 662, 676; *Orr Ewing* v. *Colquhoun*, L. R. [2 App. Cas.] 839, 861.)

The plaintiffs in this action have no greater or more extensive right of access than their grantors had when the structure was placed by the railroad company where it now is. When they took title to the uplands the railroad was where it now

is with lawful right in the defendants to maintain and operate it there. The fact that the plaintiffs purchased the lands on the shore and proposed to use them for a purpose for which they had never been used before did not enlarge or change their rights as riparian owners. The fact that it then became more convenient or profitable for them to have access to the channel through an artificial canal thirty feet wide and ten feet deep could not and did not make the structure in the river unlawful which was lawful before. The plaintiffs had no right to an artificial mode of navigating the waters that was destructive of the right of the defendants to use their own lands for the purposes of a railroad. If the defendants had obstructed the plaintiffs' access by a solid embankment, a very different question would then be presented. It could then be said that they had used their land in such a way as to obstruct the plaintiffs in the exercise of their rights just as it can now be urged that the latter are insisting upon such a use of their easement as to interfere with the rights of the owner of the land under water.

The right which the plaintiffs assert is not a natural or necessary incident of their ownership of the uplands, but much more. It is the right to construct and maintain a deep watercourse from their brick yard, three thousand feet to the main channel of the river, and not to the navigation of the waters in their natural state. They claim the right for that purpose, not only to cross the land of the defendants, but also the intervening land of the state, for the space of one hundred feet and then across the bed of the river to the channel, through the lands of the state, some twenty-eight hundred feet more. This is substantially a claim on the part of the plaintiffs that, as an incident of their ownership of the shore, they can make such changes in the bed of the river and divert the waters of the channel as their convenience or necessities may require. The defendants' railroad structure is, doubtless, an obstruction to the exercise of such an extensive claim of right, and it is only in that sense that it has been found to be unlawful. If the plaintiffs' rights are as broad as claimed it

is obvious that the railroad structure cannot lawfully be maintained. The judgment, we think, rests upon an erroneous view of the nature and character of the plaintiffs' rights as riparian owners. It virtually treats them as owners of the bed of the river, as well as the uplands, and denies to the defendants the right to use their land without the consent of the owners on the shore, or without in some way extinguishing the easement of access. The principle for which the plaintiffs contend would, when carried to its logical results, be productive of very serious consequences to public interests and private rights based upon the ownership of the bed of the river and the soil under water, below high-water mark. If the plaintiffs' easement of access comprehends the right to dig and use an artificial canal, in order to approach their docks, then every other owner on the same side of the river, and the opposite side as well, has the same right which, if exercised, might seriously impair the public right of navigation and the private right by the grantees of the state to a reasonable use of their property. It may be true that if the plaintiffs have invaded a public right only, that the state alone can actively interfere. But since they have shown no right to the mode of access claimed, as against the defendants' structure, save their ownership of the uplands, that, we think, is not sufficient to warrant the conclusion that it is unlawful. The plaintiffs have not been deprived of a reasonable mode of access, under all the circumstances, and hence their riparian rights have not been invaded in any legal sense. If they require more extensive facilities for landing, or for conducting their business, than their grant carried with it, they cannot acquire them by enjoining the defendants from operating their railroad. The defendants' rights were established when the title of the land was acquired from the state and a reasonable and suitable mode of access provided for the plaintiffs, and they cannot be impaired by the fact that the plaintiffs have devoted their property to uses that may, for the purpose of greater convenience, require other modes of access.

The right of access and of navigation which the law secures to the riparian owner as one of the incidents of his title to the uplands, does not include any right arising from the use of the land under water or the bed of a tidal river, below high-water mark. In the present case the plaintiffs' rights, as the owners of the bank, were enlarged by a subsequent grant from the state of lands under water, but their right to use the bed of the river is limited by the boundaries of this grant. It is true that they have assumed to use the bed of the river for the construction of a deep artificial channel to their property for private purposes, but this is not a right flowing from or incidental to their grant, but something quite independent of their riparian rights. Whether such use of the bed be lawful or unlawful, it is quite clear that it cannot be made the basis of an attack upon the defendants' structure. The defendants have shown that they have the title to that portion of the bed of the river where their structure stands, but the plaintiffs have shown no title whatever to the land where they have dug the canal. Under such circumstances, it is quite difficult to suggest or imagine any principle of law or justice that would warrant the plaintiffs in insisting that the defendants' railroad must be put out of the way in order to enable them to use the canal. Such a claim cannot be justified except upon the broad ground that the plaintiffs have the right to make such changes in the natural bed of the river from time to time as they may consider necessary in order to land at their brick yard with large vessels ; and whenever the defendants' structure stands in the way of such changes it becomes unlawful and can be removed. It is obvious that such a principle cannot be defended or upheld.

Nor can it be claimed that a structure such as this, placed in a public river under such circumstances, and by such authority, is *per se* unlawful as against the riparian owner without regard to the effect upon the right of access. So long as that right, in the natural condition of the river and the shores is not interfered with or obstructed, or, at least, so long

as the sovereign or its grantees provide for a reasonable and suitable mode of access under all the circumstances and at all times, the riparian owner has no ground of complaint, because the sovereign has made reasonable use of its own property, or the right to such use has been acquired by an individual or a corporation.

It is not found or claimed that the defendants have obstructed or interfered with the plaintiffs' easement of access otherwise than so far as it prevents them from digging and maintaining an artificial waterway from their property to the channel of the river for the floating of large vessels. That is an enlargement of the right of access existing or capable of enjoyment in the natural state of the waters, and under the circumstances unreasonable, and, therefore, not a natural or necessary incident of the plaintiffs' grant.

The pile bridge or railroad structure of the defendants, built upon lands which they acquired from the state in pursuance of legislative authority, without obstructing or interfering with the plaintiffs' natural or reasonable easement over the waters to the navigable channel, is not an unlawful interference with any of the plaintiffs' property rights.

Upon the undisputed facts as they appear in the record, the plaintiffs were not entitled to enjoin the operation of the defendants' railroad, or to maintain any action against the defendants for an unlawful injury to their property. There are other questions in the case that have been discussed upon the briefs of counsel, but in the view that we have taken with respect to what seems to be the fundamental principle involved they need not be considered.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.