BORDER ISLAND COMPANY, Plaintiff, *v.* COWLES SHIPYARD COMPANY et al., Defendants.

(Supreme Court, Erie Equity Term, June, 1914.)*

**Lands** under water — ownership of — riparian rights — injunctions — accretions.

The Niagara river, being an international boundary line between the United States and the Dominion of Canada to which the rule of tide lands and water applies, the lands under the water of said river located east of Canada belong to the state of New York subject, however, to the paramount right of congress to control and improve navigation and regulate commerce thereon.

Such ownership of the state, however, differs from that by which it holds uplands for sale or pre-emption, for its title to lands under water is held in trust for the people of the state for the purpose of enabling them to enjoy the navigation of the waters, to carry on commerce over them and have liberty of fishing and boating thereon freed from the obstructions or interference of private parties.

While the state may be the owner of the lands under water surrounding " Strawberry island " located in the Niagara river at a point where it divides into two branches, one continuing northwesterly between the Canadian shore on the west, Strawberry island and Grand island on the east, and the other continuing northerly between the easterly ·shores of Strawberry island and Grand island and the westerly shores of the city of Buffalo and the town of Tonawanda, the owner of " Strawberry island " and all the appurtenances thereto belonging possesses all the rights of use of the waters surrounding the island by way of fishing, boating, navigation and the transportation of commerce that are possessed by the public or by any citizen of the state, and in addition thereto as riparian owner has the right to have the island supported in its natural condition by the adjoining lands under the waters surrounding it with the right to have the bed of the river

* Received too late for insertion in proper place.— [REPR.

remain in its natural condition, maintaining its natural habit or currents as affecting the premises without diminishing or increasing the speed or volume or deflecting the currents.

Such owner is also entitled to the increase derived from accretion together with the exclusive right to purchase from the state abutting lands with the right of access over the same to the waters surrounding the same for the purpose of maintaining docks in aid of commerce, subject, however, to the powers of congress and the people of the state to deepen or improve the channel in aid of navigation for the promotion of commerce.

While ordinarily the riparian rights of an upland owner extend to the thread of the stream, but not necessarily to the building of docks which would be tolerated only to the navigable waters of the river, the fact that the federal government has constructed a ship canal for the purposes of navigation along the easterly side of the easterly branch of the Niagara river, the effect of which is to divert a large volume of water into the new channel, materially changes what would be the center line of the flow of the water based upon volume, and the thread of the stream must be regarded as the center line between the banks of the river, the shore of the city of Buffalo on one side and that of Strawberry island on the other.

The riparian rights of the owner of " Strawberry island " extend southward and up the Niagara river covering the bar of gravel and sand there located until it is crossed by the international boundary and is met by the thread of the eastern branch of the river; consequently the riparian rights of said owner in the west and south extend to the international boundary line and upon the east to the thread of the stream, the center line of the river between the shores of the island and the mainland.

In view of the fact that serious injury may result from the pumping of gravel by defendants from around said island which could not be adequately compensated for by any legal remedy, and which might be difficult in many instances to prove, plaintiff in an action to permanently enjoin defendants from removing sand, gravel or soil between the shores of the island and the thread of the river around the island and adjacent thereto will be awarded judgment for the issuing of an injunction within the territorial limits specified in the opinion herein.

Supreme Court, June, 1914. [Vol. 94.

Trial before Albert Haight, former judge of the Court of Appeals, under order of reference in an action for an injunction.

Simon Fleischmann and Charles Diebold, Jr., for plaintiff.

Henry W. Killeen and Vernon Cole, for defendants.

Haight, Referee. This action was brought by the plaintiff, the Border Island Company, as the owner of Strawberry island in the Niagara river and of the riparian rights pertaining thereto, to permanently enjoin the defendants from removing sand, gravel or soil between the shores of the island and the thread of the river around the island and adjacent thereto, thereby interfering with the lateral support of the island, changing and greatly augmenting the current of water around the island, interrupting and preventing the increase of the island by accretion and disturbing the natural habit of the river as it affects the island and interfering with the plaintiff's prior right to acquire from the people of the state their interest or easement in the land under water adjacent to the island.

All of the defendants have appeared and answered, interposing defenses, which will be considered later on, except the defendant Walter Matticks, who has not answered herein.

The plaintiff, the Border Island Company, is a corporation organized under the laws of this state and has become the owner of Strawberry island together with all and singular the rights, hereditaments and appurtenances to the same belonging or in anywise appertaining.

Strawberry island is located in the Niagara river

in the vicinity of a mile below the International bridge at a point where the river is divided into two branches, one continuing northwesterly between the Canadian shore on the west, Strawberry island and Grand island on the east; and the other continuing northerly between the easterly shores of Strawberry island and Grand island and the westerly shore of the city of Buffalo and town of Tonawanda. It is about 5,700 feet long with a width of about 1,300 feet, of irregular shape, containing about 100 acres of land. The island is of gravel and sand formation. The flow of the water of the river from the mouth of Lake Erie to the point where the river is divided is of great volume and very rapid and it doubtless is a fact that the sand and gravel of which the island is formed and surrounded was washed down from some point above by the action of the current and deposited in the pools or eddies at the place where the river is separated into branches. Surrounding the island is a shelving shallow bed of the same material extending for a considerable distance toward the thread of the stream on either side. At the southerly end or head of the island the gravel bed extends southerly and easterly up the river a distance of 3,300 feet, forming the wedge which splits the channel into the two rivers already described.

The sand and the gravel are taken from the bed of the river by large vessels which anchor or are held over the bed of gravel while there is lowered from the vessel a pipe upon which there is a hood that rests upon the bed of gravel and then by means of powerful steam pumps the gravel is drawn through the pipe up into the body of the vessel or scow. It appears from the stipulated facts in the case that the defendant Cowles Shipyard Company was the owner of the tug *Frank Lenhanan* of which the defendant Smith had been captain and that it has been engaged in towing the

sandsucker *James D. Harrigan, Jr.;* that the defendant Wellington McMinn has been the owner and captain of the *Major Symons* engaged in towing the sandsucker *Daniel D. Perry;* that the defendant James Harrigan Company has been the owner of the sandsuckers *James D. Harrigan, Jr.,* and *Daniel D. Perry;* that the defendant Walter Matticks has been the owner of the tug *Walter Mattick* of which the defendant Herbert Short is captain and which has been engaged in towing the sandsucker *Elenora* and the defendant Benjamin L. Cowles has been the owner and proprietor of the sandsucker *Crescent* of which the defendant William G. Fox has been captain. It also further appears that the average load of sand or gravel of the sandsuckers so owned by the defendants is as follows: *Crescent,* 450 cubic yards; *James D. Harrigan, Jr.,* 400 cubic yards; *Daniel D. Perry,* 300 cubic yards; *Elenora,* 400 cubic yards.

It also appears from the testimony that these so-called sandsuckers were employed in taking sand and gravel from the vicinity of Strawberry island between May seventeenth and November thirteenth of the season 1913, and that the *Crescent* had taken 134 loads, amounting to 60,300 cubic yards, the *James D. Harrigan, Jr.,* 90 loads, 36,000 cubic yards; the *Daniel D. Perry,* 73 loads, 21,900 cubic yards; the *Elenora,* 7 loads, 2,800 cubic yards, all of which was substantially pumped from the bar off of the south end of Strawberry island.

It appears from the testimony of engineer Wing that he had made a computation approximately of the amount of gravel contained in the bar south of Strawberry island and had determined that it contained 2,197,000 cubic yards, and that the four sandsuckers for the defendants, working daily, each taking one load would remove the entire bar in 1,270 days, less than

four years' time. It also appears from his testimony that the removing of the bar tends to accelerate the currents of the river, thus changing its habit and preventing the lodging or accretion to the island of the sand and gravel that wash down the river, and that the tendency is in time to undermine or wash away the island itself.

I think it must now be regarded as the settled law, at least of this state, that the dominion and sovereignty over lands covered by tide waters within the limits of the state belong to the state with the consequent right to use or dispose of any portion when that can be done without substantial impairment of the interest of the public in the waters, subject always to the paramount right of Congress to control and improve the navigation so far as may be necessary for the regulation and promotion of commerce with foreign nations and among the states; that the common law rule that obtains as to inland rivers and small streams to the effect that the abutting owner of the uplands takes title to that which is under the waters of the stream to the thread thereof, has no application to the great northern lakes and rivers which form the international boundary between the United States and Canada and which are devoted to foreign and interstate commerce; that as to those waters the rule of tide lands and waters applies, and the state becomes the owner of the bed of the stream subject, however, to the right of congress to control and improve navigation and regulate the commerce thereon. The ownership of the state, however, differs from that by which it holds uplands for sale or pre-emption, for its title to lands under water is held in trust for the people of the state for the purpose of enabling them to enjoy the navigation of the waters, to carry on commerce over them and have the liberty of fishing and boating

thereon freed from the obstructions or interference of private parties. I am, therefore, of the opinion that the lands under the waters of Niagara river, it being an international boundary between United States and Canada, located east thereof, belong to the state of New York. *Illinois Con. R. R. Co.* v. *Illinois,* 146 U. S. 435; *Pollard, Lessee* v. *Hogan,* 3 How. 212; *Webber* v. *Hartford Commissioners,* 18 Wall. 57; *United States* v. *Chandler-Dunbar Water Co.,* 209 U. S. 447; *Matter of Commissioners of State Reservation,* 37 Hun, 537; *Fulton L. H. & P. Co.* v. *State of New York,* 200 N. Y. 400; *Saunders* v. *N. Y. C. & H. R. R. R. Co.,* 144 id. 75.

While the state may be the owner of the lands under water surrounding Strawberry island, the plaintiff as owner possesses all of the rights of use of the waters surrounding the island by way of fishing, boating, navigation and the transportation of commerce that are possessed by the public or any citizen of the state, and in addition thereto it, as riparian owner, has the right to have the island supported in its natural condition by the adjoining lands under the waters surrounding it with the right to have the bed of the river remain in its natural condition, maintaining its natural habit or currents as affecting the premises without diminishing or increasing the speed or volume or deflecting the currents; the plaintiff is also entitled to the increase derived from accretion, together with the exclusive right to purchase from the state such lands as abut upon the plaintiff's uplands, with the right of access over the same to the waters surrounding the same for the purpose of maintaining docks in aid of commerce, subject, however, to the powers of Congress and the people of the state to deepen or improve the channel in aid of navigation for the promotion of commerce. Farnham Water Rights, § 62; *Lyon* v. *Fishmongers Co.,* L. R. (1 App. Cas.) 662, 676; *Ewing*

v. *Colquohoun,* 2 id. 839, 861; *Hedges* v. *West Shore Co., R. R. Co.,* 150 N. Y. 150; *Saunders* v. *N. Y. C. & H. R. R. Co.,* 144 N. Y. 75, 87; Gould Waters (2d ed.) §§ 111, 150, 154, 167; Angell Watercourses (7th ed.), § 541; *Matter of City of Buffalo,* 206 N. Y. 319; *Town of Brookhaven* v. *Smith,* 188 id. 74; *Riley* v. *Continuous Rail Joint Co.,* 110 App. Div. 787; affd., 193 N. Y. 643.

In addition to the foregoing we have the Public Lands Law (§ 75), in which it is provided that the commissioners of the land office may grant in part or otherwise to the owners of the lands adjacent to the lands under water specified to promote the commerce of the state for the beneficial enjoyment thereof of such owners or for agricultural purposes so much of said lands under water as they may deem necessary for that purpose. No such grant shall be made to any person other than the proprietor of the adjacent lands, and any such grant made to any other person shall be void.

Ordinarily the riparian rights of an upland owner extend to the thread of the stream but not necessarily as to the building of docks which would be tolerated only to the navigable waters of the river. Upon the trial some question arose with reference to what was to be regarded as the thread of the stream as located on the easterly branch of the Niagara river in front of the plaintiff's island. It appears that the federal government has constructed a ship channel for the purposes of navigation in Niagara river along the easterly side of the easterly branch of the river four hundred feet wide and twenty-three feet deep from Black Rock harbor down the river, the effect of which is to divert a large volume of water into the new channel, thus materially changing what would be the center line of the flow of the water based upon volume. I am of the opinion, however, that as applied to this river

the thread of the stream must be regarded as the center line between the banks of the river, the shore of the city of Buffalo on one side and that of Strawberry island on the other. Bouvier defines " Thread " as the center line of the stream or watercourse. In 5 Cyc. 902, it is said that " The thread of a stream is the line midway between the opposite shore lines, when the water is in its natural and ordinary stage, at medium height, and neither swollen by freshets nor shrunken by drought. In locating the thread no account is taken of the main channel or current." See authorities there cited.

With reference to the western branch of the river we are confronted with a very different question. It appears that the international boundary line runs along through the river at a distance approximately of 300 feet west of Strawberry island, which is several hundred feet within what otherwise might be termed the thread of the stream or the riparian rights of the plaintiff.

Neither party has submitted arguments upon the question as to whether the riparian rights of the plaintiff extend beyond the international boundary line. I am not, therefore, aided by the views of counsel upon the question. The state of New York does not own the bed of the stream beyond that line, neither does the Congress have power to improve or aid commerce therein. The plaintiff could not construct docks or piers extending beyond the line without obtaining the consent of the Canadian government or complying with the revenue statutes of the two governments. Even the common law right of citizens to fish is subject to the laws and regulations of the Canadian government. The beds of gravel and sand, if such there be located in that part of the stream, would be under the ownership and control of that government beyond

the jurisdiction of the courts of this state. It may be true that our courts having jurisdiction of a person or a party may compel him to execute papers and prohibit him from doing certain specified acts, but in so far as the possession, management and control of real estate is concerned, an action with reference thereto is deemed local and confined to the jurisdiction in which the real estate is located.

It is contended on behalf of the defendants that the riparian rights of the plaintiff only extend at right angles toward each shore, the eastern shore of the river on one side and the western or Canadian shore on the other side, and that it does not extend southerly up the stream beyond the body of the island. It may be in some instances that above an island or below an island the riparian rights of parties upon either side of the stream would meet at the center of the stream and that consequently their riparian rights might be recognized as superior to the riparian rights of the owners of the island, but in this case no such riparian rights exist. The owners of land upon the Canadian shore could not extend their riparian rights beyond the international boundary and the owners of land upon the eastern shore could not extend their riparian rights beyond the thread of the eastern channel of the stream, so that the point between the thread of the stream and the international boundary would be the territory over which no abutting owner upon the river banks could make any claim of riparian rights.

In this connection we must not confound the rights of a riparian owner with those which he may have under the statute empowering the land commissioners to convey to an adjacent land owner the lands under water. As to such lands I am aware that it has been held with reference to an island in the East river in

which the land comes to a point that the adjacent owner could only have a patent from the commissioners of the land office perpendicular to the sides of the island and adjacent thereto and not to take part thereof which comes to a point (*People* v. *Schermerhorn*, 19 Barb. 540), and that this case was cited by Judge Parker in the case of *Knickerbocker Ice Co.* v. *Schultz*, 116 N. Y. 382, but without any discussion of the question. It is not my purpose on this occasion to determine the question as to what lands could be conveyed by the commissioners of the land office, for that question is said to be pending before the board and is not involved in this litigation. I am, therefore, of the opinion that the riparian rights of the plaintiff do extend southward and up the river covering the bar of gravel and sand there located until it is crossed by the international boundary and is met by the thread of the eastern branch of the river. It consequently follows that the riparian rights of the plaintiff in the west and south extend to the international boundary line and upon the east to the thread of the stream, the center line of the river between the shores of the island and the mainland.

It is contended on behalf of the defendants that they have violated no riparian right of the plaintiff and that no injury results to the plaintiff from the taking of the gravel. That the taking of the gravel from the bed of the river had been indulged in for many years without complaint and that their right thereto continued, as it has been exercised for a long period of time. It may be that no substantial injury has heretofore resulted to the plaintiff by reason of the removal of the gravel by the defendants. Justice Wheeler at Special Term has virtually so held. It also may be true that many years ago the gravel in the bed of the river was considered of no value and

any person that desired was permitted to take the same without complaint. As to all such gravel taken, it on being reduced to possession doubtless became property and when sold for commercial purposes the purchaser obtained good title thereto. This was what was practically held in the case of *Soliday* v. *Johnson,* 38 Penn. St. 380. In that case the plaintiff had sued for the value of a quantity of paving stone which the defendant had taken and carried away. The defendant asserted that the stones were the property of the state and that the plaintiff could not recover. The stones were gathered under a common practice existing in that locality from the bed of the Delaware river and used for the paving of streets. It was held under the circumstances that the plaintiff was entitled to recover. The difficulty, however, with the situation as now presented with reference to Strawberry island and the bed of gravel surrounding it, is that gravel has become valuable as an article of merchandise and can no longer be taken without objection under a common consent, and it is under this changed condition of things that we are required to determine the rights of the parties. The plaintiff may not be able to show that all of the secretions that ordinarily came to the island have not attached thereto during the operation of the defendants. The plaintiff may not be able to show that the habit of the river or the currents of water flowing by the island has been materially changed or that land has been washed away that otherwise would not have been. The plaintiff may not be able to show that any specified portion of the island has caved in or been washed away by reason of the action of the defendants, but it does distinctly appear that the defendants have been sucking gravel by means of their vessels from that portion of the bed which runs from the head of the island south up to the point of the

separation of the currents of the river forming the two branches referred to, and that large quantities of gravel have been taken from this bed to the depth of twenty. or twenty-five feet and that the quantity of gravel included in the bed of the river would all be removed within the space of about four years.

It is, therefore, apparent that from the quantity of gravel conceded to have been taken, a substantial portion of the bar in question has already been removed and that it is the purpose of the defendants to continue the taking of gravel therefrom unless restrained by the court from so doing. It has already been pointed out that this bar of gravel extending up the river to the point where the river is separated into channels forms a wedge which operates to separate the currents, deflecting one to the east and the other to the west and thereby it becomes a shield, preventing the swift, powerful current of the river from rushing down upon the island and washing it away. No person can at this time foresee or perhaps state at just what time damages will occur to the plaintiff by reason of the removal of the bar, but it is apparent that at some time, if the removal of gravel is still permitted to continue, serious damages are liable to and probably will occur. It is the pumping of gravel by the defendants from around the island that this action was brought to prohibit, and it is in view of the fact that serious injury may result which could not be adequately compensated for by any legal remedy, and which might be difficult in many instances to prove, that appeal has been made to equity to interfere by injunction, and it has been repeatedly held that equity will protect riparian rights from interference or injury when there is an inadequacy of legal remedies and a multiplicity of suits for damages might accrue. *Corning* v. *Troy Iron & Nail Factory,* 40 N. Y. 191; *Smith* v. *City of Rochester,* 38

Hun, 612; affd., 104 N. Y. 674; *Gilzinger* v. *Saugerties Water Co.,* 66 Hun, 173; affd., 142 N. Y. 633; *Smith* v. *City of Rochester,* 92 id. 463.

I am thus brought to a consideration of the defense interposed. It appears that the plaintiff or its predecessor in title entered into a contract or executed a license to another corporation permitting it to take sand and gravel from around the island for a consideration to be paid for each cubic yard taken, and under that contract or license three or four sand-sucking vessels have been operated in addition to those operated by the defendants. If, as is claimed, the plaintiff became a trespasser upon the lands of the state in unlawfully taking or authorizing the taking of the gravel and sand belonging to the state, it may be that equity would not interfere as between two trespassers engaged in an unauthorized and unlawful business. The question therefore presented is one of importance and may not be free from doubt. It has been held, however, that the contract or license under which sand and gravel has been taken by the licensees was a valid contract and recovery could be had for the gravel taken thereunder. That question, as I understand, is pending before the Appellate Division, and I consequently do not feel called upon to discuss it further. Of course the plaintiff cannot complain of or recover from the defendants for any injury to its property resulting from the taking of the sand and gravel by the licensees. It may also be true that the plaintiff would have difficulty in case of serious injury resulting to the island in proving as to whether it was caused by the defendants or by the licensees, but I am inclined to the view that the riparian owner did not become a trespasser and wrongdoer by reason of its appropriating or authorizing the appropriation of soil or earth underneath the waters bordering upon its

23

upland. We may regard it as common knowledge that as to lands abutting upon tide waters it is the custom among upland owners to take from the foreshore or tideway the sand and gravel that may accumulate there and draw it up upon the beach or upland, thereby adding to the stability of such uplands and preventing it from injury from storms and the incoming high tides. As riparian owner the plaintiff is entitled to the use of the waters and lands abutting upon his uplands that is not inconsistent with that which the state maintains for the use of the public or that which the general government may require for the improvement and aid of commerce. No complaint has been made so far as appears from the evidence by either the general government, the state or the inhabitants thereof, to the taking of the sand and gravel authorized by the plaintiff. I, therefore, incline to the view that the plaintiff cannot be held to be a wrongdoer. If not, I incline to the view that the granting of the license only can be considered upon the question of damages and that it cannot be deemed to be an admission of the right of the defendants to also take sand and gravel from the same beds.

It is further contended on behalf of the defendants that there was an unlawful combination created between the plaintiff and the licensees. I do not deem the evidence sufficient to justify the finding that such a combination was entered into, and therefore refrain from further discussion of the question.

On the submission of this case, the attorneys of the respective parties stipulated that: " The referee herein announce his decision generally without findings, and that within five days after such announcement either party may submit to the referee such requests to find as may be desired and the referee shall thereupon with all convenient speed pass upon such

requests to find, if any, make and sign his decision
containing the findings of fact he deems established
by the evidence and his conclusions of law thereon,
which decision shall be of the same force and effect
as if there had been no preliminary announcement of
his decision.''

Pursuant to the above stipulation I have reached
the conclusion that I must award judgment for the
plaintiff for the issuing of an injunction within the
territory limits specified in the opinion.

Judgment for plaintiff.