## S. KURAMOTO *v.* K. HAMADA.

## No. 1802.

ARGUED FEBRUARY 5, 1929.    DECIDED FEBRUARY 25, 1929.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.

This is a bill in equity for an injunction to restrain the respondent from interfering with the complainant's right of fishery in certain waters of Kaliawa adjacent to the shores of this island at or near Kalihi. The complainant holds the fishery under a weekly tenancy from the estate of Samuel M. Damon. By a judgment entered in the circuit court of the first judicial circuit of this Territory on March 31, 1905, it was adjudged and de-

clared that the said S. M. Damon had a "vested right as owner of all that certain sea fishery, situated within the reef, the same not being a pond or artificial enclosure in Kalihi, Island of Oahu, known as the 'Kai o Kaliawa' or fishery of Kaliawa." In the judgment the extent of the waters included in the fishery is described by metes and bounds. The area of the fishery as so described is 290 acres. In the judgment it was further adjudged that Damon was "entitled each year to set apart for himself for his sole and exclusive use within the fishing grounds within the metes and bounds above set out, one given species or variety of fish natural to said fishery, giving public notice of the kind and description of the fish so chosen or set apart; and also to the right, in lieu of setting apart some particular fish to his exclusive use, to prohibit upon consultation with the tenants of his lands, all fishing upon the fishing grounds within the metes and bounds above set forth during certain months of the year and during the fishing season to exact from each fisherman one-third of all the fish taken upon said fishing ground." There was nothing in the evidence contradicting the continued existence of these rights in Damon or his lessees. So, also, no evidence was introduced tending to show alienation at any time by the Territory of any rights within the area described other than those set forth in the judgment. In the absence of such evidence the presumption must be that the Territory still holds the title to the soil under the waters in the area named and is still the owner of all rights incidental to such title other than the rights of fishery enumerated in the judgment. The right of navigation in and over the waters of Kaliawa is one of the rights so reserved or not parted with. In the absence of statutory inhibitions to the contrary the public generally and all of its members are entitled to participate in this right of navigation.

It is generally stated in the books, apparently without dissent, that when the right of navigation conflicts with that of fishery the latter is subordinate and the former is paramount; that the exercise of each of these rights must be in a reasonable manner and with due regard to the rights of others; and that what is a reasonable exercise of the right of navigation is something a precise definition of which cannot be formed in advance to meet all possible cases but must be ascertained and adjudged in each case as it arises in the light of its surrounding circumstances. "The general doctrine to be deduced from the authorities in reference to the use of navigable waters as public highways is that each person has an equal right to their reasonable use. What constitutes reasonable use depends upon the circumstances of each particular case, and no positive rule of law can be laid down to define and regulate such use with entire precision, so various are the subjects and occasions for it, and so diversified the relations of parties therein interested. In determining the question of reasonable use, regard must be had to the subject-matter of the use, the occasion and manner of its application, its object, extent, necessity and duration, and the established usage of the country. This common right gives no immunity for injuries committed in its use, but one exercising such right is liable for all damages caused by his negligence to riparian owners or others." 21 A. & E. Ency. L. 442. See, also, 26 C. J. 604; 2 Farnham, Waters, p. 1416; *Davis* v. *Winslow,* 51 Me. 264, 297.

A channel known as the Kalihi channel extends from a point very near low water mark to the open sea and occupies almost all of the area of the Kaliawa fishery. This channel is about six hundred feet in width and varies in depth from about fourteen feet to about twenty-four feet and is about two miles in length. At a point about

three-fourths of a mile from the shore is the outer end of a sewer installed and maintained by the Territory. This point is referred to in the testimony as "the sewer outfall." Under the regulations of the territorial board of health, fishing within a distance of one hundred feet of this outfall is prohibited.

The acts charged against the respondent as constituting an interference with the complainant's right of fishery are the following: that the respondent daily anchors a sampan at a point about fifty feet distant from the sewer outfall; that as a result of his sampan being thus anchored, other sampans engaged in fishing for aku in the open sea at times come to the respondent's sampan and there purchase bait to be used in their business of fishing; that the respondent with his sampan occasionally takes passengers over and across the waters of the fishery to an island situated near the outer edge of the reef, called Kahakaaulana; and that the respondent maintains three or four small boats which he rents to others with knowledge that those others will use the boats for the purpose of unlawful fishing in Kaliawa. The respondent's main business is that of fishing in the open sea. He lives at a place on the shore about two hundred feet from one of the boundaries of complainant's fishing grounds. Other than the vicinity of the sewer outfall there is no suitable place for anchoring his sampan less than about two thousand feet distant from his home. He finds it impracticable to anchor his boat at that distant point. His use of his sampan in fishing is entirely legitimate. As a member of the public he has a right of navigation in the navigable waters of the Kalihi channel and any adjacent territorial, tidal waters. The right of navigation includes as a necessary incident the right of anchorage. It is difficult to imagine where in navigable waters the respondent could anchor his sampan with less injury to

the complainant than in close proximity to the sewer outfall at a point where fishing by the complainant is prohibited by law. Anchorage at that place would seem to be an extremely reasonable exercise of his rights as a member of the public. The other sampans engaged in deep sea fishing are similarly in the reasonable exercise of rights of navigation in going to the respondent's sampan at the sewer outfall and there purchasing bait, that is to say, to the extent that the practice has prevailed (a very few times each year). The carriage of passengers to and from the Island of Kahakaaulana is another reasonable exercise of the right of navigation. It has been used by the respondent but sparingly,—only three or four times a year. Navigable waters, including both those navigable by larger vessels and those navigable by rowboats and other small craft, are public highways. The right of navigation includes the right to travel on the waters not only for business purposes but also in pursuit of pleasure.

The evidence fails to show that the respondent encouraged any one to fish unlawfully in the waters of Kaliawa or that he had any knowledge that the few persons to whom he occasionally lent his rowboats had any intention of violating the complainant's rights of fishery. Moreover, the showing is that two men who rented boats from the respondent and who fished unlawfully in Kaliawa were promptly arrested, convicted and sentenced and that since their conviction there has been no such violation by any one of the complainant's rights of fishery.

It may be added that while individual witnesses have testified that the passage of sampans and rowboats over the waters of Kaliawa "disturbed" the fish in those waters, there is absolutely no evidence tending to show that any financial injury has resulted to the complainant from this so-called disturbance. So far as the evidence goes, the fish "disturbed" in one part of the fishery have been

846

caught in another. Adapting the words of one author, "one time and one place is as good as another, under ordinary circumstances, for the catching of fish." 2 Farnham, Waters, p. 1416. The express evidence is that the complainant's income from his fishery has averaged about $6000 per annum. There is not the slightest evidence tending to show that that income has been diminished by reason of the respondent's acts.

Whether the superiority of the right of navigation can be supported to the point where it practically destroys the right of fishery need not be determined. Such is not the case now before us.

The decree of the trial court refusing an injunction and dismissing the bill is affirmed.

*C. A. Gregory* (*Ulrich & Hite* with him on the briefs) for petitioner.

*J. L. Coke* (*W. T. O'Reilly* with him on the brief) for respondent.