ANDERSON *v.* REAMES.

4-6704

161 S. W. 2d 957

Opinion delivered May 4, 1942.

*Mahony & Yocum,* for appellant.

*Surrey E. Gilliam,* for appellee.

HOLT, J.  Appropriate proceedings were instituted in the Union chancery court by appellees, J. B. Reames and H. O. Reames, styled "Operating Plaintiffs," and a large number of other parties styled "Public Plaintiffs," to restrain appellants and other defendants from enclosing the shore, or dock site, and from interfering with the rights of appellees in the use and occupancy as a camp site, of a strip of land approximately 200 feet wide, along the west shore of Grand Mere Lake in Union county, Arkansas.

The principal issue presented on the trial below, and here on appeal, relates to riparian rights on Grand Mere Lake and more particularly to the right to maintain and

operate a commercial boat dock on the water and shore of this lake. Upon a trial the court found and decreed in effect, that the "Operating Plaintiffs" (appellees here) were without right to use the shore of the property controlled by appellants under a lease, but decreed that appellees had the right to maintain and operate their equipment on the water of the lake and refused to order its removal from its position in front of the shore line of appellant's property. This appeal followed. Appellees have cross-appealed.

The record reflects that appellees, since 1938, have operated a commercial fishing camp on Grand Mere Lake, which is conceded to be a navigable body of water and part of the Ouachita river. This camp was located on and in front of a strip of land approximately 200 feet wide on the shore of the lake. The Crossett Lumber Company owns practically all of the land bordering on this lake, including the strip of land in question here. Appellants have the use and control of this property to high-water mark under a lease from the Crossett Lumber Company.

In the operation of their commercial fishing camp, appellees maintained a minnow dock, or raft, on the surface of the lake directly in front of appellants' property and forty-eight feet from the water's edge. This minnow dock is 21 x 24 feet. Fifty-one feet from the water's edge and within a few feet of the minnow dock, appellees have a houseboat 40 x 60 feet, which they use as a home. Both the raft and the houseboat are anchored to posts in the bed of the lake. In addition, appellees owned a large number of small boats which they rented to fishing parties. They also had constructed plank walkways from the houseboat and minnow dock to the shore and maintained a refreshment booth on the shore about forty-seven feet from the water's edge. Appellees kept their small boats, which they rented to the public, beached at the water's edge in front of their houseboat and minnow dock, and on the 200-foot strip of land in question. Appellants erected a fence along the shore line in an attempt to prevent its use by appellees in the manner above stated.

The trial court in its decree held that Grand Mere Lake is a navigable body of water; that appellants, as lessees of the Crossett Lumber Company, control the land bordering on the lake to the high-water mark and that there was so little variation between the high and the low-water mark that they are practically the same, it appearing that the water level of the lake is largely controlled by a lock or dam. The decree also directed appellants to remove their fence, and directed appellees to remove their refreshment booth from the shore, to remove all rental boats from the shore and to remove the platform, or boardwalks, leading from the minnow dock and the houseboat to the shore. By the decree, however, appellees were permitted to retain their houseboat and minnow dock in their present position.

We quote from the decree as follows: "The plaintiffs and cross-defendants, J. B. Reames and H. O. Reames, have the right to maintain a commercial fishing dock upon the surface of the lake, but they and their agents, servants and employees should be enjoined and restrained from using, directly or indirectly, any part of the leased premises in the conduct of their business and from inviting the public to make use of the same;

. . .

"J. B. Reames and H. O. Reames, their agents and employees, are perpetually enjoined from occupying or using the leased premises, or any part thereof, and from conducting any business thereon pertaining to the operation of the boat dock aforesaid; . . . from using the leased premises in the operation of their said business, and from directly or indirectly inviting the public or members thereof to go upon the leased premises; from going upon the leased premises in passing to or from their boats or other equipment upon the water; from parking any vehicle or inviting the public or members thereof to park automobiles or other vehicles upon the leased premises, and from going upon the leased premises for any purpose whatsoever; from . . . receiving or discharging passengers or customers from or on the shore of the leased premises. . . ."

Appellants were also awarded a small judgment against appellees for damages covering the use of the shore to date of decree.

The contention of the parties is stated by appellants in this language: "We have heretofore stated the contention of the appellees, J. B. Reames and H. O. Reames, to be that by reason of the fact that this lake is navigable water, they, as members of the public, have the right to maintain and operate the commercial boat dock and, in so doing, to the exclusive use of the water occupied by them and immediately fronting and paralleling the shore, and to use the shore in the conduct of their business.

"The appellants contend that the right to maintain and operate the dock is a right belonging or pertaining to the bank and incident to the ownership of the soil above high-water mark, and is therefore a riparian right of Crossett Lumber Company granted by said company to appellant, J. R. Withers, and by him sub-let to appellant, H. L. Anderson, and that the Reameses are squatters without any right or authority to use the water or shore for a commercial boat dock and that they should be enjoined from so using the same and directed to remove their equipment from the water fronting the leased premises."

The parties here concede that Grand Mere Lake is a navigable body of water. There is no dispute that appellants, as riparian owners or lessees, would have the use and control of their land to the high-water mark. The test in determining high-water mark is announced by this court in the case of *State ex rel. Thompson* v. *Parker*, 132 Ark. 316, 200 S. W. 1014. There it is said: "In *St. L., I. M. & S. Ry. Co.* v. *Ramsey*, 53 Ark. 314, 13 S. W. 931, 8 L. R. A. 559, 22 Am. St. Rep. 195, we defined 'high-water mark' and prescribed the test for ascertaining it as follows (quoting syllabus): 'The high-water mark of a navigable stream, the line delimiting its bed from the bank, is to be found by ascertaining where the presence and action of water are so usual and long continued in ordinary years as to mark upon the soil of the bed a

character distinct from that of the banks in respect to vegetation and the nature of the soil'."

On the record before us, which includes a carefully drawn plat and photographs of the shore fronting appellants' property, we think the preponderance of the testimony shows that there is a marked difference between the high and the low-water mark of this lake and that there is a defined shore or beach of sand and gravel clear of all vegetation for a distance of approximately fifty feet slightly rising from the water's edge back to where all vegetation ends, constituting the high-water mark above defined. To this extent appellees' contention on cross-appeal must be sustained. However, in the view that we take on the whole case, this does not require a reversal.

On appellees' contention that appellants had no valid lease and, therefore, no control over the property in question to the high-water mark, it suffices to say that we think the record clearly reflects that they do hold a valid lease from the Crossett Lumber Company. The lumber company is not a party to this litigation.

Under the court's decree the appellees, as we have indicated, were required to move all of their equipment from any proximity to the shore. Under the decree they are forbidden in the prosecution of their business to use any boat to pick up the public on appellants' shore or unload them there at any time, and they may not use the shore in front of appellants' property reaching from high to low water in carrying on their commercial fishing and boating enterprise. Appellees' minnow dock and houseboat floating upon the navigable waters of the lake do not touch or come in contact with the shore and were permitted to remain under the court's decree.

The position of appellants here is clearly expressed by them in their brief in these words: "The right to maintain and operate the dock is a right belonging or pertaining to the bank and incident to the ownership of the soil above high-water mark, and is therefore a riparian right . . ." We cannot agree that the riparian rights of appellants go as far as appellants insist.

In *State ex rel. Thompson* v. *Parker,* 132 Ark. 316, 200 S. W. 1014, this court said: "It is held in the well-considered cases of *Railway* v. *Ramsey,* 53 Ark. 314, 13 S. W. 931, 8 L. R. A. 559, 22 Am. St. Rep. 195, and *Barboro* v. *Boyle,* 119 Ark. 383, 178 S. W. 378, that the title to the bed of navigable waters in our state, that is, the title to the bed of such waters to high-water mark, is in the state. The character of such title is well expressed in the case of *Pewaukee* v. *Savoy,* 103 Wis. 271, 79 N. W. 436, 74 Am. St. Rep. 859, 50 L. R. A. 836, as follows: 'Upon the admission of the state into the Union the title to such lands, by operation of law, vested in it in trust to preserve to the people of the state forever the common rights of fishing and navigation and such other rights as are incident to public waters at common law, which trusteeship is inviolate, the state being powerless to change the situation by in any way abdicating its trust.' . . .

"Of course, appellees, being still the owners of the lands bordering on the lake to high-water mark, would have certain riparian rights which other members of the public would not have, . . . They would have the same common right of hunting and fishing in such waters as other members of the public would have." *Id.,* p. 323.

In *Barboro* v. *Boyle,* 119 Ark. 377, 178 S. W. 378, this court said: "The land rises gradually, and it is difficult to tell where the high-water mark is on that side of the lake. As we have already seen, the title to the bed of the lake to high-water mark is in the state for the use of the public, and the public have a right to hunt and fish therein."

The only right that appellants, as riparian owners, would have over the general public and appellees is the right to the uninterrupted and free ingress and egress to their property along its water's edge between high and low-water mark.

The rights and privileges of riparian ownership is defined in 45 C. J. 491, § 143, as follows: "The rights of riparian owners upon navigable streams include the rights possessed by riparian owners upon other watercourses; and as to navigable waters generally, they in-

clude (1) the right of access to the water; (2) the right to build a pier out to the line of navigability; (3) the right to accretions; and (4) the right to a reasonable use of the water as it flows past the land, and have been often so enumerated.''

Appellants' rights will not permit them to interfere with the rights of the public generally in the use of the shore or beach in front of their property from high-water mark to the water's edge for the purposes of bathing, hunting, fishing and the landing of boats, so long as such use does not unreasonably interfere with appellants' right of ingress and egress. Nor do these rights permit appellants to prohibit appellees, or the public generally, from the use of the navigable waters in front of their property for the above purposes so long as such use does not unreasonably interfere with appellants' rights of ingress and egress.

The riparian rights of appellants do not permit them to force appellees to remove their houseboat and minnow dock from that part of the lake fronting appellants' property.

We think the chancellor was correct in holding that the houseboat and minnow dock of appellees in no way interfered with the free egress and ingress of appellants to their property or to any of their rights as riparian owners.

In *Kuramoto* v. *Hamada,* 30 Haw. 841, that court held: ''The right of navigation in tidal waters includes the right of anchorage, and the same may be exercised for business purposes or for pleasure.''

In 45 C. J. 501, § 152, the text-writer says: ''The owner of the uplands cannot so exercise his right of passage or access to the channels as to destroy or unreasonably interfere with the right of the state to put its own land to such use as it may think proper, or in such a way as to prevent other persons to whom the sovereign has granted the bed of the river, or some portion of it, from using their own property in a reasonable way. The right of access and of navigation does not include any right arising from the use of the land under

water or the bed of the river below high-water mark. The right of access of the riparian owner cannot be enlarged at will or according to his own convenience or necessity, but he has no ground for complaint so long as the natural condition of things is left practically unchanged and opportunity is afforded at all times for reasonable methods of access.

In the case of *Hedges* v. *West Shore Railroad Co.,* 55 Am. St. Rep. 660, 150 N. Y. 150, 44 N. E. 691, the court said: ''The right of access and navigation which the law secures to the riparian owner as one of the incidents of his title to the uplands does not include any right arising from the use of the land under water or the bed of a tidal river, below high-water mark.''

In the case of *Tiffany* v. *Town of Oyster Bay,* 234 N. Y. 15, 136 N. E. 224, 24 A. L. R. 1267, in discussing the riparian owner's rights, the court said: ''The rights of the riparian owner, the owner of the upland fronting on navigable tidewaters, over the foreshore, are rights of reasonable, safe and convenient access to the water for navigation, fishing, and such other uses as commonly belongs to riparian ownership. *Brookhaven* v. *Smith, supra.* Each right—the right of the public, of the owner of the foreshore, and of the riparian owner—must be exercised in a reasonable way. *Hedges* v. *West Shore R. Co.,* 150 N. Y. 150, 55 Am. St. Rep. 660, 44 N. E. 691.''

And in the case of *Stewart* v. *Turney,* 197 N. Y. S. 81, 203 App. Div. 486, the court said: ''The owner of the upland may utilize the foreshore of an inland navigable lake, for hunting; but such use is not absolute and exclusive, and the public at large has the same rights. Wild duck hunters standing and walking along the water's edge, and crouching behind temporary hides, and also drawing their boats partly out of the water and onto the beach, cannot be enjoined on the broad ground that the plaintiffs, to whom the owners of the upland have granted the right of hunting and trapping, have an exclusive right to the foreshore.''

And in 26 C. J. 602, the author says: ''Fishing implies a reasonable use of the waters and shore line of

navigable streams, and as a general rule all of the members of the public have a common and general right of fishing in public waters, such as the sea and other navigable or tidal waters, and no private person can claim an exclusive right to fish in any portion of such waters, except in so far as he has acquired such right by grant or prescription. . . . An owner of land abutting on one of such lakes or ponds has no greater rights than others to fish in front of his land, except to the extent that he is given greater rights by statute, or acquires them by grant or prescription."

On the whole case, the decree is affirmed both on direct and cross-appeal.

GRIFFIN SMITH, C. J., dissents in part and concurs in part. McHANEY, J., dissents.