Louis C. Tiffany, Plaintiff, *v.* Town of Oyster Bay and William B. Kunz, Defendants.

(Supreme Court, Nassau Special Term, October, 1918.)

Lands under water — grant of — abutting owners — easements — navigable waters — town of Oyster Bay has right to enter upon filled-in land below high-water mark and erect bath-houses and other improvements for benefit of public.

An owner of lands abutting on Cold Spring Harbor obtained from the commissioners of the land office a grant of land below high-water mark in front of his premises for the purpose of beneficial enjoyment. After he had erected a series of concrete walls running from his upland into the waters of said harbor it was judicially determined that he acquired no right under the state grant because the title to the lands below high-water mark was vested in the town of Oyster Bay under the Andros patent of 1677. *Held,* that so long as his easement of access to the navigable waters was not destroyed or unreasonably interfered with the town had the right to enter upon the filled-in land and erect bath-houses and other improvements for the benefit of the public.

The right of the public to use the foreshore for fishing, bathing, boating and passage carries with it the right to make improvements calculated to render such public rights more available.

The shore owner is not entitled to have the upland remain in actual contact with the water through the entire length of his original line, and the filling in of a portion of the fore-

shore is not an invasion of his rights where a foreshore suffi-
cient in extent to enable him to exercise his easement of
access remains in its natural condition.

The fact that the owner himself created the filled-in
land does not enlarge his rights so as to give him the right
to restore the land to its original condition by removing the
fill.

Action to restrain the erection of bath-houses in
front of plaintiff's upland on the westerly side of Cold
Spring Harbor.

Frederic R. Coudert (Rowland Miles, of counsel),
for plaintiff.

George B. Stoddart (Henry A. Uterhart, of coun-
sel), for defendants.

Faber, J.   This is an action to restrain the town of
Oyster Bay and William B. Kunz, as the town's con-
tractor, from erecting bath-houses for the use of the
public on a strip of filled-in land in front of plaintiff's
upland on the westerly side of Cold Spring Harbor,
and for permission to the plaintiff to restore such
filled-in land to its former condition of land under
water by removing the fill.

There is no dispute as to the material facts.   The
plaintiff, Louis C. Tiffany, is the owner of a large
tract of upland on the westerly side of Cold Spring
Harbor, upon which his residence is situated.   In
December, 1904, he applied to the commissioners of
the land office of the state of New York for a grant
of land below high-water mark in front of his entire
upland, for the purpose of beneficial enjoyment, and
such grant was made to him on March 30, 1905, after
a public hearing in which the town appeared and made
objection.   Upon receiving such grant the plaintiff

erected a series of concrete walls or abutments running from his upland into the waters of Cold Spring Harbor. As soon as he started to do this he was notified by the town authorities that they claimed title to the lands under the waters of Cold Spring Harbor, and upon his refusal to remove the walls which he had built the town commenced to remove the same.

Thereupon, on or about April 28, 1908, an action was commenced in the Supreme Court, in which Mr. Tiffany was the plaintiff and the town of Oyster Bay and the then highway commissioners of the town were defendants, to restrain said defendants from removing or attempting to remove any jetty, wall or structure erected by the plaintiff on the said lands below high-water mark.

After a trial at Special Term a judgment was entered on January 7, 1909, granting the injunction prayed for by the plaintiff. An appeal was taken by the town to the Appellate Division in the Second Department, which affirmed the judgment below by a divided court. Thereafter an appeal was taken by the town to the Court of Appeals, which reversed the judgment and granted a new trial (*Tiffany* v. *Town of Oyster Bay*, 209 N. Y. 1), and upon the new trial the complaint was dismissed on the merits by a judgment entered February 7, 1914. The result of this litigation was to establish that the state had no title to the land below high-water mark which it assumed to grant to Mr. Tiffany as owner of the adjacent upland, and that title to said land below high-water mark was vested in the town of Oyster Bay under the Andros patent of 1677.

While the litigation above mentioned was pending the plaintiff proceeded to build a retaining wall below high-water mark and running substantially parallel

Supreme Court, October, 1918.          [Vol. 104.

with the line of his upland in front of a portion of said upland, and to fill in below high-water mark behind this wall, thus creating the strip of filled-in land which is the subject of the present controversy.

A public highway runs down to the waters of Cold Spring Harbor through the plaintiff's upland, and the termination of this highway, which has been used by the public generally for many years as a point of departure for the use of the waters of the harbor for boating, fishing, bathing and other purposes, adjoins one end of such strip of filled-in land.

Upon the entry of final judgment in its favor in the former injunction suit the town started to erect a row of bath-houses for the use of the public on a portion of the strip of land which had been filled in by the plaintiff below high-water mark, such row of bath-houses being approximately fifty feet in length, and being situated immediately east of the point where the public highway above mentioned reaches the shore.

The plaintiff thereupon commenced the present action, asking in his complaint that the defendants be restrained from erecting such bath-houses and that the plaintiff be permitted to restore the foreshore in front of his premises to its original condition by removing the fill. The answer of the defendant town admits that it is the intention of said defendant to take and hold possession of all the filled-in land in question and to erect thereon, for the use of the public generally, the bath-houses above mentioned, and to use the premises " as a place for bathing, boating and other lawful purposes."

The claim is advanced on behalf of the plaintiff that the defendant town would have had no right to fill in any portion of the foreshore in front of plaintiff's upland, and consequently that it has no right to maintain and use the strip of filled-in land which has been

created by the plaintiff. After a careful consideration of the authorities cited in plaintiff's brief and other decisions bearing on the subject I am unable to agree with this contention. Clearly the defendant town would have no right to cut off all access by the plaintiff to the navigable waters of Cold Spring Harbor by the erection of a solid wall or other impassable barrier between the plaintiff's upland and such waters for any purpose other than the improvement of navigation without making compensation for the easement of access so destroyed. *Matter of City of New York,* 168 N. Y. 134. I am of the opinion, however, that said defendant would have had the right to fill in such portion of the foreshore as has been filled in by the plaintiff and to use the filled-in land in the manner now proposed by it. *Hedges* v. *West Shore R. R. Co.,* 150 N. Y. 150; *Oelsner* v. *Nassau Light & Power Co.,* 134 App. Div. 281.

In *Hedges* v. *West Shore R. R. Co., supra,* the plaintiff, an upland owner on the westerly shore or bank of the Hudson river, sued to restrain the operation of a railroad which had been constructed by the defendant on a strip of land below high-water mark, in front of plaintiff's premises and between those premises and the navigable portion of the river. The railroad structure was a pile bridge with openings of fourteen feet between the uprights and a height, in the clear, of eight feet above high tide, and the strip of land upon which it was built had been acquired by the defendant railroad company by exercise of the power of eminent domain, title thereto being originally vested in the state. It was held by the Court of Appeals that as the defendant's railroad structure did not obstruct or interfere with the plaintiffs' natural or reasonable easement over the waters to the navigable channel it

29

was not an unlawful interference with any of the plaintiffs' property rights, and that the plaintiffs were not entitled to enjoin the operation of the railroad or to maintain any action against the defendant for an unlawful injury to their property.  Judge O'Brien, who wrote the opinion of the court, said:

" The sovereign, that is to say the state, could have built a railroad upon the strip of land while it was the owner of it, and the then owner of the plaintiffs' uplands could not complain, providing he was given suitable and reasonable means of access to the channel. Instead of doing this it has chartered a corporation for that purpose, and this corporation has acquired the title of the state to the piece of land and has constructed the railroad, and is operating it as a public common carrier.  The corporation constructed the road upon its own land, under legislative authority, and provided for passageway, over the water beneath the structure, spaces fourteen feet in width and eight feet in height at high tide.  The easement of access to the river by the owner of the lands on the shore was respected.  It could still be enjoyed and exercised in a reasonable way and in practically the same way that it had been enjoyed before or was capable of enjoyment in its natural state.  Hence, the defendants or their predecessors in title invaded no property right of the riparian owner."

In *Oelsner* v. *Nassau Light & Power Co., supra,* it was held that where a town, having title to lands below high-water mark, had granted to an electric light company the right to erect and maintain poles on the shore between the high and low-water marks, the adjoining owner of uplands could not compel the removal of the poles without showing some substantial interference with his easements as a ripa-

rian owner. Mr. Justice Miller, writing for the court, said: '' If, then, the title is in the town, it must follow that it has the right, subject to the easement of the upland owner, to make such public use of it as it deems proper, precisely as the state has that right respecting the land under water to which it has title.''

In *People* v. *Steeplechase Park Co.,* 218 N. Y. 459, the power of the state, having title to foreshore, to grant the same to a private individual for the purpose of beneficial enjoyment was affirmed, and it was held that where such a conveyance has been made without restriction and with the intention of granting a fee for beneficial enjoyment, the title of the grantee, except as against the rights of riparian or littoral owners, is absolute.

If the state or a municipality having title to the foreshore can lawfully grant the same to an individual or a corporation, to be used wholly or in part for private profit or enjoyment, subject only to the limitation that the riparian owner's easement of access to the navigable waters shall not be destroyed, there would seem to be still stronger reason for holding that it was within the power of the town in this case to devote a portion of the foreshore in front of plaintiff's upland to a purely public use, subject to the same limitation. The right of the public to use the foreshore upon the margin of tide waters for fishing, bathing, boating and for the passage incident to those pursuits is recognized in *Barnes* v. *Midland R. Terminal Co.,* 193 N. Y. 378, and in other decisions of the Court of Appeals, and in my opinion it follows that any improvement of the foreshore made for the purpose of facilitating the exercise of these rights must be held lawful and within the power of the state or municipality having title to the foreshore, so long as the ease-

ment of access belonging to the upland owner is not destroyed or unreasonably interfered with. To hold that the public has the right to use the foreshore for fishing, bathing, boating and passage and at the same time deny the right of the town to make improvements calculated to render such public rights more easily available would be illogical and unjust.

The federal and state governments have the power to make alterations in the foreshore for the improvement of navigation (*Slingerland* v. *International Contracting Co.*, 169 N. Y. 60; *Sage* v. *City of New York*, 154 id. 61), but I do not find any decision holding that the right of the sovereign to make alterations in the foreshore is limited to the improvement of navigation. Neither the construction of the railroad which was involved in the case of *Hedges* v. *West Shore R. R.*, *supra*, nor the erection of the line of electric light poles which was involved in the case of *Oelsner* v. *Nassau Light & Power Co.*, *supra*, could be justified on that principle. The true distinction between cases where the improvement or alteration is in aid of navigation and cases where it is for some other purpose seems to be that in the former class of cases the riparian owner may be entirely deprived of his easement of access to navigable waters without compensation, while in the latter such owner's easement of access cannot be destroyed unless compensation is made.

In *Barnes* v. *Midland R. R. Terminal Co.*, *supra*, it is said that "the littoral or riparian owner, in his capacity as such, acquires only those rights in the foreshore which are necessary to enable him to make a reasonable use of his upland; and the principal attribute of such use is access to and egress from the open water." In *Sage* v. *Mayor*, 154 N. Y. 61, it is said that the riparian owner is entitled "to certain valuable privileges or easements, including the right

of access to the navigable part of the river in front, for the purpose of loading and unloading boats, drawing nets,and the like,'' and this definition of the rights of the upland owner is quoted with approval in *Town of Brookhaven* v. *Smith,* 188 N. Y. 74.  These decisions, and others that might be cited, establish the plaintiff's right, as a littoral owner, to a reasonable easement of access to the navigable waters of the harbor, over the foreshore in front of his premises. In my opinion, however, they do not support the broader claim of the plaintiff, that he is entitled to have his upland remain in actual contact with the waters through the entire length of his original shore line, and that any filling in of the foreshore, however limited in extent, is an actionable invasion of his rights.  Nor have I been able to find any other decision in this state which supports this broad claim of the plaintiff.  In *Mulry* v. *Norton,* 100 N. Y. 437, it was said that a littoral, like a riparian, proprietor, '' has a right to the water frontage belonging by nature to his land.''  The controversy in that case, however, was between adjoining littoral owners as to the ownership of accretions in front of their respective uplands, and what was said with reference to natural water frontage must be interpreted with reference to that fact.  In *Matter of City of New York, supra,* the question was as to the right of the city to construct upon the westerly shore of the Harlem river, without compensation to the upland owners, a speedway which, from the way in which it was built and the limitations placed upon its use, would entirely cut off the access of such upland owners to the navigable waters of the river.  In holding that the city did not have such right the Court of Appeals adverted to the fact that the uplands to the west of the proposed speedway were

as completely cut off from the use of the river as if the city had erected a " Chinese wall," and that the owners of such uplands were deprived not only of those private rights which inhered in their ownership, but also of those privileges which, as a part of the public, they enjoyed in common with the rest of the public. The court expressly refrained from deciding whether the upland owners would have been entitled to compensation for loss of their riparian easements if the municipality had laid out and constructed a general street open to commercial traffic. The case of *Duke of Buccleuch* v. *Metropolitan Board of Works,* L. R. (3 Exch.) 306, relied upon by the plaintiff, turned upon the construction of a statute which expressly recognized the loss of river frontage as the subject of damages and not upon the common law. In that case some of the judges in their opinions made quite sweeping statements as to the right of a riparian owner to have access to the stream along his whole frontage, but it seems to me that such statements, if literally interpreted, are in conflict with the decision of our Court of Appeals in *Hedges* v. *West Shore R. R. Co.,* *supra,* and also with the principles laid down in *Oelsner* v. *Nassau Light & Power Co., supra.*

In the present case a considerable portion of the foreshore in front of plaintiff's upland, sufficient in extent to enable the plaintiff to exercise his easement of access to the navigable waters of the harbor in a reasonable manner, still remains in its natural condition. It cannot be said therefore that the plaintiff's easement of access was destroyed or unreasonably interfered with by the making of the fill here in question, and I accordingly conclude that the defendant town would have had the right to make such fill in the first instance.

The fact that the plaintiff himself created the strip of filled-in land certainly cannot enlarge his rights in the premises or operate to the prejudice of the defendant town. The town, under its ancient charter, owned the land upon which the fill was made. The filling in by the plaintiff was a trespass, and the new land thereby created became the property of the town. *Saunders* v. *N. Y. C. & H. R. R. R. Co.,* 144 N. Y. 75; *People ex rel. Blakslee* v. *Commissioners of Land Office,* 135 id. 447; *Steers* v. *City of Brooklyn,* 101 N. Y. 51. The town did not induce the acts of the plaintiff in making the fill or even silently acquiesce therein. On the contrary, it opposed the plaintiff's acts most vigorously from the beginning. Conceding the plaintiff's claim that all of his acts in making the fill were performed under a mistake on his part as to the title to the foreshore, he was none the less a trespasser, and that fact, in my opinion, precludes him from claiming any relief in the present action on the theory of mistake. *Putnam* v. *Ritchie,* 6 Paige, 390; *Pettes* v. *Bank of Whitehall,* 17 Vt. 435; *Kansas Pac. R. R. Co.* v. *Mihlman,* 17 Kan. 224; *Warner* v. *Fountain,* 28 Wis. 405. The removal of the fill without the consent of the town would involve a second trespass and would deprive the town of valuable property to which it unquestionably has legal title under the decisions heretofore cited. I have not overlooked the contention of the plaintiff that the making of the fill involved large expense on his part. This is undoubtedly true, but it is also true that the defendant town was put to very large expense in the litigation which resulted from plaintiff's acts, so that the equities in that regard are not unequal. Moreover, the removal of the fill, which is the principal relief sought by the plaintiff, would not tend in any way to reimburse the plaintiff for the outlay which he

has incurred. I therefore conclude that the plaintiff's prayer for permission to restore the land in question to its original condition by removing the fill must be denied.

What has thus far been said calls also for the conclusion that the town has the right to erect the proposed bath-houses on the filled-in land. This conclusion follows even if the land in question be regarded as ordinary foreshore, subject to the easement of the plaintiff as littoral owner, since it is clear that the erection and maintenance of a row of bath-houses fifty feet in length, at the point proposed, would not interfere with such easement to any appreciable degree. I am of the opinion, however, that the rights of the defendant town are not limited to the erection of the proposed bath-houses, but that said defendant has the right to devote the filled-in land to the use of the public as a place of recreation, and is entitled to the possession thereof, for that purpose, free from any easement on the part of the plaintiff as owner of the upland. The town is the owner of the premises. The proposed use is for the benefit of the public. The plaintiff will still have direct access to the waters of the harbor from a considerable portion of his original shore line, and, as one of the public, he will have the same rights in the filled-in land as the rest of the public. In this respect his situation differs entirely from the situation of the upland owners whose rights were involved in *Matter of City of New York, supra,* and is even more favorable than the situation of the plaintiff in *Hedges* v. *West Shore R. R. Co., supra.* The plaintiff's upland will not enjoy the same degree of privacy that it would if his contentions were upheld, but privacy can hardly be deemed an incident of littoral ownership where title to the foreshore is vested

in the state or town.   In its natural condition, the entire foreshore in front of plaintiff's upland was subject to use by the public for bathing, boating, fishing and passage, and the existence of a public highway, running down to the shore at this point, made it possible for the public to exercise their rights to a greater extent than is possible in some localities.

In addition to the filled-in land at the foot of the public highway, there are two narrow strips of fill farther west, but these fills seem to have been incidental and necessary to protect the upland from erosion, and there is no evidence that the defendant is asserting any claim in regard thereto.   For these reasons I have confined my consideration of the case to the area of filled-in land at the foot and to the east of the highway, and what has heretofore been said should be understood as having reference to that land alone.

Complaint dismissed upon the merits, with costs.

Ordered accordingly.