## LOUIS C. TIFFANY, Respondent, *v.* TOWN OF OYSTER BAY et al., Appellants.

**Riparian rights — lands under water — respective rights therein of the public, the owner thereof and the owner of the upland — filling in of land under water by owner of upland acting under grant by state afterward held invalid — filled-in land retains its character as land under water — where ownership is in town it may properly be restrained from erecting large structure paralleling shore line of upland proprietor — town may be permitted to have fill removed at upland owner's expense.**

1. Land under the waters of the sea and its arms, between high- and low-water mark, is subject, *first,* to the *jus publicum,* the right of navigation, and when the tide is out, the right of access to the water for fishing, bathing and other lawful purposes to which the right of passage over the beach may be a necessary incident. Such land is also subject, *secondly,* to the *jus privatum,* the rights of the owner of the foreshore, which rights are at all times subject to the public rights and to the rights of the riparian owner to access to the water; *thirdly,* the rights of the riparian owner, the owner of the upland fronting on navigable tide waters, over the foreshore are rights of reasonable, safe and convenient access to the water for navigation, fishing and such other uses as commonly belong to riparian ownership. Each right, the right of the public, of the owner of the foreshore and of the riparian owner, must be exercised in a reasonable way.

2. Where the owner of uplands bordering upon an arm of the sea has filled in land under water adjacent thereto, title to which had been granted to him by the state, but thereafter it is determined in an action that title to the land under water is in the town and the grant thereof to the upland proprietor invalid, the title of the town is, nevertheless, subject to the rights of said proprietor as riparian owner.

3. The filled-in land retains its character as land under water and the owner of the adjacent upland has the same rights and no greater rights in and across the same as if no filling had been done, or as if the filling had been done lawfully by the town. His rights as riparian owner continue and he has not become an inland owner to the extent of the fill.

4. The fact that he was technically a trespasser when he made the fill does not now estop or bar him from asserting his rights as riparian

owner, and the town may properly be restrained from interfering with his suitable and reasonable access to the ocean by appropriating the fill to the erection of a large bath-house structure paralleling his shore line.

5. The action being in equity the town may properly be permitted, at its option, to have the fill removed at the upland owner's expense. *Tiffany* v. *Town of Oyster Bay*, 192 App. Div. 126, modified.

(Argued May 10, 1922; decided July 12, 1922.)

APPEAL from a judgment entered July 10, 1920, upon an order of the Appellate Division of the Supreme Court in the second judicial department, reversing a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term and directing judgment in favor of plaintiff.

*Henry A. Uterhart* and *George B. Stoddart* for appellants. The plaintiff having filled in the land below high-water mark in front of his upland, such land has lost its character of foreshore and become upland, and the plaintiff's easements as riparian owner have been extinguished with respect to such filled-in land. (*First Construction Co.* v. *State of New York*, 221 N. Y. 295; *People* v. *Steeplechase Park Co.*, 218 N. Y. 459; *Barnes* v. *Midland R. R. T. Co.*, 193 N. Y. 378; *Town of Brookhaven* v. *Smith*, 188 N. Y. 74; *Murphy* v. *City of Brooklyn*, 98 N. Y. 642; *Wetmore* v. *Brooklyn Gas Light Co.*, 42 N. Y. 384; *Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 144 N. Y. 75; *Halsey* v. *McCormick*, 18 N. Y. 147; Gould on Waters, 314, § 158.) Assuming, as claimed by the plaintiff, that the filled-in land retains its character as foreshore, and still remains subject to plaintiff's easement as riparian owner, the bath-houses to be erected by the defendant do not constitute an interference with the plaintiff's easement of access. (*Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 144 N. Y. 75; *Hedges* v. *W. S. R. R. Co.*, 150 N. Y. 150; *Oelsner* v. *Nassau Light & Power Co.*, 134 App. Div. 281; *Murphy* v. *City of Brooklyn*, 98 N. Y. 642; *Hynes*

v. *N. Y. C. R. R. Co.*, 231 N. Y. 229.) The plaintiff is not entitled to remove the fill, and there is no basis for relief on the ground of mistake. (*Rogers* v. *Jones*, 1 Wend. 237; *Loundes* v. *Huntington*, 153 U. S. 1; *Pettes* v. *Bank*, 17 Vt. 445; *Marble* v. *Whitney*, 28 N. Y. 297; *Weed* v. *Weed*, 94 N. Y. 243; *Haviland* v. *Willets*, 141 N. Y. 35; *Flynn* v. *Hurd*, 118 N. Y. 19; *Green* v. *Smith*, 160 N. Y. 533; *Newburgh Sav. Bank* v. *Town of Woodbury*, 173 N. Y. 55; *Terry* v. *Moore*, 12 Misc. Rep. 641.) Plaintiff committed a trespass in filling in defendant's property and, therefore, has no standing in a court of equity for relief. (*Pettes* v. *Bank of Whitehall*, 17 Vt. 435; *Warner* v. *Fountain*, 28 Wis. 405; *Putnam* v. *Ritchie*, 6 Paige, 390; *K. P. R. R. Co.* v. *Mihlman*, 17 Kans. 224.)

*Frederic R. Coudert, Rowland Miles* and *Wilmot T. Cox* for respondent. The plaintiff is a riparian owner on Cold Spring Harbor. (*Yates* v. *Milwaukee*, 10 Wall. 417; *Matter of City of New York*, 168 N. Y. 140; *Mulry* v. *Norton*, 100 N. Y. 437.) The town had no right either to fill in or maintain the land in Cold Spring Harbor in front of the plaintiff's property, because this destroys his riparian ownership *pro tanto*. (*Matter of City of New York*, 168 N. Y. 134; *Sage* v. *Mayor, etc.*, 154 N. Y. 70; *Buccleugh* v. *Met. Bd. of Works*, L. R. [3 Exch.] 306; *Rumsey* v. *N. Y. & N. E. R. R. Co.*, 133 N. Y. 79; *Kane* v. *N. Y. & N. E. R. R. Co.*, 125 N. Y. 176.) The sovereign state, or the federal government alone, has the power to destroy the riparian character of land. But such destruction must be to promote commerce and navigation. The town has no such right. Its interest in the foreshore is purely private and proprietary. (*People ex rel. Howell* v. *Jessup*, 160 N. Y. 249; *People* v. *N. Y. & S. I. Ferry Co.*, 68 N. Y. 71.) Plaintiff is entitled to equitable relief. (*Hoebler* v. *Myers*, 132 N. Y. 366; *Coxe* v. *State*, 144 N. Y. 396; *Champlin* v. *Layton*,

18 Wend. 425; *Stone* v. *Hall*, 17 Ala. 434; *Goodspeed* v. *I. S. R. Co.*, 184 N. Y. 351; *Freeman* v. *Curtis*, 51 Me. 140; *Bingham* v. *Bingham*, 1 Ves. Sr. 126; *Pusey* v. *Desbouvrie*, 3 P. Wms. 315; *Broughton* v. *Hunt*, 3 D. & J. 501.) The fact that the fill — which is maintained by the town, contrary to law — was made by the plaintiff in the first instance, does not destroy the plaintiff's standing in equity, and does not give the town rights that it did not originally possess to cut down the length of his frontage on the water. (*Ledyard* v. *Ten Eyck*, 36 Barb. 102; *Langdon* v. *Mayor, etc.*, 93 N. Y. 129; *Mulry* v. *Norton*, 100 N. Y. 424; Gould on Waters, §§ 123, 124, 128, 148, 158; Angell on Tide Waters, 249; *Steers* v. *City of Brooklyn*, 101 N. Y. 51.)

POUND, J. Plaintiff had asserted rights to lands below high-water mark, adjacent to his spacious residential estate on Oyster Bay along the westerly shore of Cold Spring Harbor, under a grant from the state of New York made to him by the commissioners of the land office. The validity of this grant was challenged by the town, and was in a former action sustained in the trial court and by the Appellate Division. (*Tiffany* v. *Town of Oyster Bay*, 141 App. Div. 720.) On appeal the judgment in his favor was reversed on a holding that the waters of Cold Spring Harbor were included in the Governor Andros Colonial grant or patent of 1677 to the town of Oyster Bay and that plaintiff had acquired no title thereto. (209 N. Y. 1.) Plaintiff has a shore frontage of about 3,670 feet. Upon the foreshore a wrecked hull of a vessel lay partly embedded in sand, projecting at about right angles with the shore front. In the month of May, 1913, before the adverse decision of the appeal, but while the case was in this court pending decision, plaintiff took up sand and material which he deposited to the westward of the hull. Aided by the natural wash along the shore, which the wreck tended to

arrest, he thus covered the foreshore with a sloping embankment, its front about a foot above high water, triangular in shape, with its landward base occupying about one-third of plaintiff's frontage. The area is not accurately defined, but was estimated on the argument to be upward of an acre.

After the decision of this court, plaintiff offered to restore the foreshore by removing the fill, thus putting the shore back in the condition it had been. This proposal the town declined, and in June, 1916, it took possession of the filled-in land and employed defendant Kunz to build thereon a structure to contain thirty-three public bath houses of about fifty feet by ten or fifteen feet each; height not indicated. Plaintiff thereupon began this action in which he asks leave to restore the foreshore to its original condition and also asks that defendants be enjoined from building bath houses or any structures whatever thereon and that he be restored to his rights as a riparian owner of the lands belonging to him.

The trial court held that the filling in of the foreshore was a trespass; that the title of the town, derived from the Andros charter, authorized it to put up the projected bath houses, and that the filled-in land could be used generally for purposes of public recreation. (*Tiffany* v. *Oyster Bay*, 104 Misc. Rep. 445.) The Appellate Division, one of the justices dissenting, reversed the judgment of the trial court, made new findings and held that the plaintiff was entitled to final judgment enjoining and restraining the defendants from erecting bath houses or *any other structures whatever* on the filled-in land and decreeing to the plaintiff his riparian rights, unless the defendant town of Oyster Bay should elect to have the fill removed and the shore restored at plaintiff's expense; in case the defendant town should so elect, the plaintiff to restore the foreshore to its former condition at his expense. (Ibid. 192 App. Div. 126.)

The only new findings material to the issue made by the

Appellate Division are a finding to the effect that the erection of the bath house structure interferes with plaintiff's riparian rights as owner of the upland and a finding to the effect that the maintenance of the fill transforms the plaintiff into an inland owner by cutting off actual contact with the waters of Cold Spring Harbor to the extent of the fill.

If plaintiff had succeeded in establishing his title to lands under water, below high-water mark, the filled-in lands in front of his upland would have lost their character of foreshore and would have become upland, stripped of all public easements, and his own easement as riparian owner would have been merged in his superior title. When the sovereign grants to the owner of the adjacent upland the title to lands under navigable waters, such owner may, subject to the limitations imposed by the United States Constitution (*Lewis B. P. O. C. Co.* v. *Briggs,* 198 N. Y. 287), fill in such lands, make upland out of them, and extinguish the *jus publicum.* (*Wetmore* v. *Brooklyn Gas Light Co.,* 42 N. Y. 384; *People* v. *Steeplechase Park Co.,* 218 N. Y. 459, 476.)

The question is what are the present rights of the parties in relation thereto. The answer requires a consideration (a) of the *jus publicum,* (b) the *jus privatum,* and (c) the right of the owner of the adjacent upland. The law on the subject is rather indefinite. Judges have decided cases and indulged in safe generalities, but have refrained from forming explicit rules unnecessary to the decision. The English cases in point are not wholly applicable to our conditions.

The foreshore or land under the waters of the sea and its arms, between high and low-water mark, is subject, *first,* to the *jus publicum* — the right of navigation, and when the tide is out, the right of access to the water for fishing, bathing and other lawful purposes to which the right of passage over the beach may be a necessary incident. (*Barnes* v. *Midland R. R. T. Co.,* 193 N. Y. 378, 384.)

1922.]                Opinion, per POUND, J.          [234 N. Y. 15]

Such land is also subject, *secondly*, to the *jus privatum*, the rights of the owner of the foreshore, the town of Oyster Bay in this case, which holds the land in its corporate political capacity, in trust for the public good. Its rights are general in their character, as yet not defined with accuracy beyond the ownership and regulation of oyster beds and some general aid to commerce, navigation, fishing or bathing. Such rights are at all times subject to the public rights and to the right of the riparian owner to access to the water as indicated. (*Town of Brookhaven* v. *Smith*, 188 N. Y. 74, 78.) The plaintiff's contention is that the right of the town is limited to the improvement of the foreshore for public navigation, the same as if the town grant stopped at high-water mark (*Matter of City of New York*, 168 N. Y. 134) and left the town a riparian owner on navigable tide water; but the town holds title for the use of the public as well as for commerce, whatever that may imply. (*Matter of Mayor, etc., of New York*, 182 N. Y. 361.) *Thirdly*, the rights of the riparian owner, the owner of the upland fronting on naviable tide waters, over the foreshore are rights of reasonable, safe and convenient access to the water for navigation, fishing and such other uses as commonly belong to riparian ownership. (*Town of Brookhaven* v. *Smith, supra.*) Each right, the right of the public, of the owner of the foreshore and of the riparian owner, must be exercised in a reasonable way. (*Hedges* v. *W. S. R. R. Co.*, 150 N. Y. 150, 156.)

On the facts as they appear in this case, our conclusion is that the title to the plaintiff's upland and to the fill made by him on the foreshore without authority having been severed by the decision in the former case, the town of Oyster Bay holds title to the latter, subject to the rights of Tiffany as riparian owner; that the filled-in land retains its character as land under water and the plaintiff, as owner of the adjacent upland, has the same rights and no greater rights in and across the same as if no filling had been done, or as if the filling had been done lawfully by the

·town; and that plaintiff's rights as a riparian owner continue and he has not become an inland owner to the extent of the fill.

The town of Oyster Bay asserts the right to make such public use of the filled-in land as it deems proper, free from any easement on the part of the plaintiff as owner of the upland; to devote the same, *e. g.*, to the exclusive use of the public as an amusement park. (*Oelsner* v. *Nassau L. & P. Co.*, 134 App. Div. 281, 287.) The trial court held, *first*, that plaintiff's rights as riparian owner were terminated by the construction of the fill and by the consequent unity of ownership of foreshore and upland in the town; that the fill belongs to the town as upland by virtue of plaintiff's wrongful act in cutting himself off from access to the water; and *secondly*, that, if plaintiff retains any such rights as owner of the upland, the purposed use of the land by the town does not interfere therewith. The result first contended for may be possible as a naked legal proposition, *i. e.*, plaintiff made upland out of the town's land under water; therefore it retains its character as upland. But justice mitigates and corrects the harshness of strict law and permits plaintiff's natural rights as owner of the upland to be kept alive. (*Paterson* v. *East Jersey Water Co.*, 74 N. J. Eq. 49, 64; affd., on opinion below, 77 id. 588.) When he made the fill, he acted under color of title and by authority of the court and he should not be unduly and unnecessarily prejudiced by the adverse decision of this court in the first litigation between the parties. Because it now appears that plaintiff was technically a trespasser when he made the fill, he is not thereby estopped or barred from asserting his rights as riparian owner. He stands on his own title. Justice does not require and equity will not permit the permanent union of his interest with that of the town as a result of his mistake. In equity the union of ownership of dominant and servient riparian rights in the same person does not

effect a merger unless such was the intention of the parties and justice and equity require it. (*Asche* v. *Asche*, 113 N. Y. 232, 235, 236.) The second claim is equally untenable. The town may not fill in, occupy and obstruct with buildings the foreshore under the pretext of providing for the public enjoyment, so as to interfere with the rights of owners of the upland, although they may still be able to reach the water. Their rights pass along the whole frontage of their property.

The Appellate Division, on its finding of fact, was right in restraining the defendant from interfering with plaintiff's suitable and reasonable means of access to the ocean by appropriating the fill to the erection of a permanent public bath house structure fifty feet in length, paralleling plaintiff's shore line. Such an erection would not have been permitted on the foreshore. The fill does not enlarge the rights of the town in this regard. What is a reasonable use of the foreshore by the proprietary is to some extent a question of time, degree and circumstance. Doubtless the town has large beneficial rights and privileges therein, but we should not undertake by premature assertion to decide their nature and extent in detail. The question of conflicting rights is not as well settled as it might be. The case of *Sage* v. *Mayor, etc., of N. Y.* (154 N. Y. 61, 70), followed in *Matter of City of New York* (*supra*), dealt with the rights of a riparian owner merely and is not wholly applicable to this situation.

By the judgment of the court below, the town at its option is permitted to have the fill removed at plaintiff's expense. Equity may thus permit the parties to do what they have a legal right to agree to do. When one litigation over *bona fide* claims of title to property has terminated and another is pending, the parties need not stand on their legal rights. They may adjust their differences by mutual consent and concessions. The court should encourage and facilitate such settlements. Even

the present decision does not define the *jus privatum* with sufficient comprehensiveness to prevent further differences as to the rights of the proprietary and the riparian owner. The town may prefer the open water if it may not assert its claim as an owner of the upland.

The judgment appealed from should be modified by striking therefrom the words " or any other structures whatever," and as so modified affirmed, without costs.

Hiscock, Ch. J., Hogan, Cardozo, McLaughlin and Andrews, JJ., concur; Crane, J., dissents

Judgment according'y.