Henry J. Gucker, Appellant, *v.* The Town of Huntington, Suffolk County, and Others, Respondents.

Christina A. Koch, Appellant, *v.* The Town of Huntington, Suffolk County, and Others, Respondents.

Ella R. Bunce and Others, Appellants, *v.* The Town of Huntington, Suffolk County, and Others, Respondents.

Albert E. Gucker, Appellant, *v.* The Town of Huntington, Suffolk County, and Others, Respondents.

Second Department, May 18, 1934.

*Thomas F. Magner,* for the appellants.

*Isaac R. Swezey* [*Otho S. Bowling* of counsel], for the respondent The Town of Huntington.

Tompkins, J. These four actions involve the same questions of law and fact; they were tried, and are now decided, together.

The actions were to set aside, as clouds upon plaintiffs' titles, three quitclaim deeds, the first made by the Northport Clay and Fire Sand Company to Samuel Carter, the second by Samuel Carter to the defendant DeBrabant, and the third by the defendant DeBrabant to the town of Huntington. These deeds purport to release to each of the grantees the title to a certain sand bar running from the mainland in a southwesterly direction out under the waters of what has been variously described as " Cow Bay," " Centerport Harbor," " Northport Bay " and " Centerport Bay," and which we will hereafter refer to as " Centerport Bay." The sand bar extends out into the bay a distance of about 1,400 feet and in front of and contiguous to upland of the defendant DeBrabant. Between the sand bar and plaintiffs' uplands there is what plaintiffs describe as a " slough " or " creek," covered at high tide with a few feet of water and entirely bare at low tide. This is a part of Centerport bay as shown on plaintiffs' map, Exhibit 49.

It appears without dispute that the sand bar is from 400 to 700 feet from the westerly boundary of plaintiffs' premises as they are described in their several deeds, with this so-called slough or creek, described on plaintiffs' said map as a part of Centerport bay, intervening between plaintiffs' said premises and the sand bar. Title to the plaintiffs' four parcels of upland, which adjoin one another, has been in their respective families for generations, the westerly boundary of each parcel being described in mesne conveyances as " Cow Harbor " or " Cow Bay," " Northport Bay," " Centerport Bay " and " Centerport Harbor." The conveyances also contain the following provision: " And also conveying all right, title and interest of the party of the first part of, in and to the lands under the waters of Centerport Harbor in front of and adjacent to said premises to the center of said Harbor." This provision, however, was ineffective, because it is now conceded that the title to the lands under the waters of the bay was, and is, in the town of Huntington by virtue of a colonial grant to that town. So that the shore line of the bay is the westerly boundary of the plaintiffs' lands and is shown by a blue line on plaintiffs' map (Exhibit 49); and between that blue line and the sand bar there is an intervening body of water from 400 to 700 feet wide, which is a part of Centerport bay.

It is undisputed that the said sand bar, during the period of its formation and up until January 30, 1930, had been of gradual and imperceptible growth, and, until 1930, was always below high water. It appears that, in 1930, the defendant DeBrabant, with the consent of the town of Huntington, dredged from the bottom

of the bay outside the sand bar thousands of cubic yards of sand and gravel, which were deposited on top of the bar until it was raised, for an agreed distance, to a height of at least one foot above high-water mark; as a result of which plaintiffs were unable to navigate motor boats, sail boats and row boats over the bar from their uplands to the deeper waters of the bay, as they had previously done, and were thereby deprived of their rights as riparian owners. These actions, however, were not brought for damages for interference with plaintiffs' riparian rights, or to compel a restoration of those rights, but are solely for the removal of what plaintiffs claim to be clouds on their titles by reason of the said quitclaim deeds purporting to convey the said sand bar to the defendants. To obtain such relief, plaintiffs must establish their title to the sand bar, which they have failed to do. Plaintiffs do not claim title to the bar by virtue of any conveyance, but assert that the original sand bar, before it was raised by artificial means in 1930, was created by accretion and erosion of their uplands, and that thereby the westerly boundaries of their premises have been extended in front of their respective properties to and including the sand bar; they have subdivided the bar among themselves in accordance with the rule laid down in *O'Donnell* v. *Kelsey* (10 N. Y. 412), which subdivision is shown on plaintiffs' map, Exhibit 49. The sand bar to which plaintiffs claim title was undoubtedly formed by accretion covering a long period of years, but there is no evidence showing or tending to show that such accretion was by reason of erosion of plaintiffs' uplands, which, as we have already observed, are from 400 to 700 feet east of the sand bar, with waters of Centerport bay intervening; and there is undisputed testimony in the case that in forty-eight years preceding the trial plaintiffs' uplands receded by reason of erosion only ten or twelve feet from the original shore line, and it appears that the first recorded deed of plaintiffs' premises was executed in 1834; so that the physical conditions negative plaintiffs' claims that the sand bar was created in whole or in part by the erosion of their premises.

The decision in the case of *Mulry* v. *Norton* (100 N. Y. 424), cited by plaintiffs, does not support their claim. In that case property which belonged to plaintiff's grantor was submerged by water, which later receded, and it was held that title to the land which had formerly been under water belonged to the plaintiff, and the court said: " Land lost by submergence may be regained by reliction, and its disappearance by erosion may be returned by accretion, upon which the ownership temporarily lost will be regained." And the court further said: " It is equally true, how-

ever, that when the water disappears from the land, either by its gradual retirement therefrom or the elevation of the land by avulsion or accretion, or even the exclusion of the water by artificial means, its proprietorship *returns* to the original riparian owners." In the case at bar there is no proof that plaintiffs' westerly boundary lines ever extended beyond the shore line of the bay, or that they ever had title by deed to the sand bar, which until 1930 was always under water; nor did plaintiffs have title to the lands under water between the sand bar and their uplands, all of which lands under water, including the sand bar, were and are owned by the town of Huntington; which facts clearly distinguish this case from the *Mulry Case* (*supra*).

Plaintiffs also cite *Tiffany* v. *Town of Oyster Bay* (234 N. Y. 15). In that case plaintiff had a shore frontage of 3,670 feet, beyond which was the wrecked hull of a vessel. The Commissioners of the Land Office had made a grant to plaintiff, the validity of which was challenged by the town but which was sustained in the trial court and by the Appellate Division (141 App. Div. 720). On appeal, however, judgment in plaintiff's favor was reversed, on the ground that the waters of Cold Spring harbor were included in a colonial grant of 1677 to the town, and that plaintiff had acquired no title thereto. (209 N. Y. 1.) Before the decision by the Court of Appeals, plaintiff had filled in a portion of the land under water from his shore out to the wrecked hull, and after that decision plaintiff offered to restore the foreshore by removing the fill, which offer was refused by the town, which took possession of the filled-in land and employed a contractor to construct public bath houses thereon, which Tiffany sought to enjoin. The trial court in the second action held that the filling in of the foreshore was a trespass; that title was in the town, and the filled-in land could be used for the purposes of public recreation. (104 Misc. 445.) On appeal, new findings were made and it was held that plaintiff was entitled to final judgment restraining defendants from erecting bath houses and decreeing plaintiff his riparian rights, unless the town should elect to have the fill removed and the shore restored at plaintiff's expense. (192 App. Div. 126.) The Court of Appeals said that if plaintiff had succeeded in establishing his title to the lands under water below high-water mark, the filled-in lands in front of his upland would have lost their character of foreshore and would have become upland, and held that the town had title to the filled land on the foreshore, which retained its character as land under water, and plaintiff as the owner of the adjacent upland had the same rights but no greater rights in and across the same as if no fill had been made, or as if the filling had been

done lawfully by the town, and that plaintiff's rights as a riparian owner continued but that he had not become an inland owner to the extent of the fill.

In the case at bar we are not called upon to adjudicate plaintiffs' rights as riparian owners, as was done in the *Tiffany Case* (*supra*), for the reason that the present actions are based solely upon plaintiffs' claims to title to the fee of the sand bar, and they ask equity to remove clouds alleged to have been created thereon by the quitclaim deeds in question.

From the concession of the plaintiffs that the town of Huntington has title to the lands under water of Centerport bay up to the plaintiffs' uplands, subject to their riparian rights, and the absence of evidence that the sand bar was created by erosion of plaintiffs' premises, or that the original westerly boundary of their upland was at a point which is now the westerly boundary of the sand bar or anywhere near it, it follows that plaintiffs have failed to establish title in the bar, and that the judgment in favor of the defendants was right and must be sustained. Our decision, however, goes no further than to determine that plaintiffs have no title to the sand bar as it has been built up, and, therefore, the quitclaim deeds constitute no cloud on their titles. Without expressing any opinion as to whether there has been impairment of the rights of plaintiffs as riparian owners, we leave them free to seek such further remedy as they may wish to pursue.

The judgments dismissing the complaints should be affirmed, with costs.

Present — LAZANSKY, P. J., HAGARTY, SCUDDER, TOMPKINS and DAVIS, JJ.

In each case: Judgment dismissing complaint unanimously affirmed, with costs.