### KETCHIKAN SPRUCE MILLS v. ALASKA CONCRETE PRODUCTS CO.

### KETCHIKAN SPRUCE MILLS v. CITY OF KETCHIKAN.

Nos. 3321–KA, 3320–KA.

District Court, Alaska
First Division, Juneau.
Aug. 18, 1953.

H. L. Faulkner, Juneau, Alaska, for plaintiff.

R. E. Robertson, Juneau, Alaska, for defendant.

FOLTA, District Judge.

The foregoing suits were consolidated for argument of plaintiff's application for a preliminary injunction.

Plaintiff operates a large sawmill in the City of Ketchikan and lumber yards and sales offices in other places in the Territory; and stores, sells and ships lumber and other products by water to its lumber yards and to consumers in the Territory and elsewhere. It also operates vessels and barges. Since the mill cannot be expanded because it is hemmed in by the business district of Ketchikan and the waters of Tongass Narrows, plaintiff bought, at a cost of $30,000 a large tract of land near the northern limits of the City, of which Blocks 14 and 15 U. S. Survey No. 1296 and the southwest portion of U. S. Survey No. 1528 abut on the tide lands, and made improvements thereon. Subsequently, Block 14 was conveyed by quitclaim deed to A. C. Kreidler, with a reservation of a common right of access to the navigable water. The following year Kreidler leased Block 14 and the "tide lands" to the defendant Concrete Products Company for 10 years, subject, however, to the right reserved by the plaintiff. Since there could be no lease of the tide lands and Kreidler had no other interest therein, the lease must be interpreted as a demise of the lessor's interest in the littoral rights. It is from these tide lands that the defendant Concrete Products is removing gravel, while the defendant City of Ketchikan is removing gravel from the tide lands abutting on Block 15.

The plaintiff asserts that it bought the upland for the purpose of acquiring the littoral rights in the abutting tide lands and that it intends to construct thereon docks, wharves, gridirons, marine railways and landing and storage facilities needed in the conduct of its business, and further asserts that without such littoral rights, the upland is of no value to it.

The defendants have been removing gravel from the tide lands involved for about a year under permits from the Bureau of Land Management, Department of the Interior, issued under 43 U.S.C.A. § 1185 et seq., and supplying it to contractors engaged in projects in Ketchikan and vicinity, for which contracts in the aggregate of nearly $10,000,000 have been let. The plaintiff contends that this statute is not susceptible of the interpretation placed upon it by the Bureau of Land Management and that it is applicable to tide abutting on public lands only. I am inclined to agree that the littoral rights of an upland proprietor may not be impaired in this manner without compensation, but find it unnecessary to decide the question of the validity of the permits at this stage of the proceeding.

The defendants argue that they and those with whom they have contracted to supply gravel will suffer great loss if the injunction is issued. I am of the opinion, however, that any loss that might be sustained by others who have not been made parties, being remote and consequential, may not be considered. On the other hand, the plaintiff argues that if the defendants are not restrained, his right of access will be impaired or destroyed and its upland rendered valueless. The basis of this argument appears to be that the removal of the gravel, of which the tide lands are principally composed, would not only increase the cost of erecting pile structures required for the enjoyment of such rights but deprive them of the means of securing or anchoring them in the soil overlying the bedrock.

It is well established that a right of access such as claimed by the plaintiff, is a property right and may be exercised by

constructing a wharf, pier or dock over the intervening tide lands to the navigable waters, Alaska Juneau Gold Mining Co. v. Northern Lumber Mills, 5 Alaska 269, affirmed Northern Lumber Mills v. Alaska Juneau Gold Mining Co., 9 Cir., 229 F. 966, as well as the erection of such other structures as may be necessary to a complete user thereof, such as a dock or revetment in shallower water for the accommodation of barges engaged in the transportation of plaintiff's lumber and other products. But, of course, such a right does not operate to vest any possessory right in the tide lands themselves.

I find that the plaintiff purchased the upland primarily to acquire a right of access over the abutting tide lands sufficient in width to enable it to expand and carry on its business, and that the use of such tide lands to their full width in the exercise of such right is reasonably necessary in the circumstances. Since, as already pointed out, the right of access to navigable water is a legal right, it follows that it may not be impaired without compensation.

The difficult question is whether the damage that the plaintiff will sustain if a preliminary injunction is not granted is irreparable. The evidence on this point is unsatisfactory. Such as it is, however, it warrants the inference that if the gravel is removed to bedrock or within a few feet thereof so that piling cannot be imbedded in the soil, any structure would lack strength and stability, particularly during extreme high tides when such structure would tend to become buoyant. The Court takes judicial notice, as announced at the hearing, of the fact that bedrock in the area in controversy is near the surface. It would, therefore, appear that the removal of gravel into which piling could be driven and anchored, would result in irreparable damage to the exercise of the right of access by means of a wharf, pier or dock, for obviously the foundation could not be restored, even by filling with similar material, to its former degree of firmness so essential to anchoring piling and, hence, could not be compensated for. Accordingly, I conclude that the continued removal of gravel pending a final hearing would cause irreparable damage to plaintiff's right of access, and that it is therefore necessary to preserve the status quo.

The fact that some of the projects for which gravel is being supplied are under construction by private contractors for the City of Ketchikan is not sufficient to support a finding of a public interest. Cf. Tiffany v. Town of Oyster Bay, 234 N.Y. 15, 136 N.E. 224, 24 A.L.R. 1267.

I am of the opinion, therefore, that the plaintiff is entitled to an injunction. Unless the parties are able in ten days from the filing of this opinion, to agree upon a method for the removal of gravel which will leave sufficient gravel undisturbed above bedrock to furnish a satisfactory foundation for pile structures, an order may be presented, enjoining the defendants as prayed for in the complaint. Such an agreement, however, is not to be understood as disposing of any claim for damages which may be predicated on the necessity of using longer piling by reason of the removal of gravel.